### CHAS. F. ORTHWEIN'S SONS v. WICHITA MILL AND ELEVATOR COMPANY.

#### Decided June 6, 1903.

**1.—Sale—Delivery to Carrier—Title Passing.**

Where there is an oral contract for the sale of wheat, and the wheat is delivered to a common carrier and the bill of lading for it is delivered to the buyer, the title rests in him, and the transportation is at his risk.

**2.—Same—Contract Construed—Place of Delivery.**

Where there was an order by letter, for the purchase of two thousand bushels of "red wheat, new crop, at 65 cents delivered Galveston, f. o. b. —— shipment within ten days. Delivery at ——," and the seller wrote in reply, "We book sale to you of 2000 bushels 65 cents Galveston," the reference to Galveston was one of price only, and not as the place of delivery, and upon delivery to the carrier the title passed to the purchaser.

**3.—Evidence—Written Instrument Construed.**

Where a written contract is unambiguous, the admission of oral evidence as to its meaning which is in line with its proper legal construction is harmless error.

Appeal from the District Court of Wichita. Tried below before Hon. A. H. Carrigan.

*Hume & Hume* and *W. P. McLean,* for appellants.

*Montgomery & Hughes,* for appellee.

SPEER, ASSOCIATE JUSTICE.—Appellee shipped a number of cars of wheat to appellants at Galveston, Texas, all of which were either destroyed or damaged in the great storm at that place on September 8, 1900. At the time of making shipments appellant paid or advanced the agreed price of the wheat, less certain margins which were reserved to cover any possible shortage in weights or errors in grades. It was to recover these margins, which were never paid, that this suit was instituted. It is the contention of appellee that the title to the wheat had passed to appellants at the ime of the loss, and upon this view the trial court rendered judgment in its favor. Upon the other hand appellants contend that under the terms of the contract of purchase the delivery had not been completed, and that the loss should therefore fall upon appellee. The controversy hinges mainly upon the construction to be placed upon a letter of confirmation written by appellants, the original of which has been brought to the court for our inspection. The letter is partly printed and partly written,—the written part we italicize,—and reads as follows:

"FORT WORTH, Texas, Aug. 7, 1900.
"Mr. *Frank Kell, Wichita Falls, Texas:*

"Dear Sir.—We confirm purchase from you to-day of ——— cars *2000* bushels, No. *4 Red Wheat, new crop,* at *65 1-2 cents* delivered *Galveston,* f. o. b. ——— shipment within *ten* days. Delivery at ——— by *Fort Worth or Galveston* weights and grades. Ship to *Galveston, care Texas Star Mills Elevator. Stop at Fort Worth C. F. O. Son's Elevator A to clean* and don't fail to note, on B. L. "For Export." Make draft on us, B. L. attached, at Fort Worth, Texas, leaving fair margin. Exchange to be paid by shipper.

"All cars must be loaded to full capacity.

"In referring to this purchase, please use Contract No. *538.*

"Yours truly,
"CHAS. F. ORTHWEIN'S SONS.

"Per *Butts.*

"*No. 3 Wheat, 59 lbs., 1c off, and 1c additional for each pound below 59. No. 4 Wheat, 57 lbs. or better, 4c off, 1c additional for each pound below 57.*"

The transaction which led up to this letter was as follows: On August 7, 1900, Frank Kell, who was the agent of, and acting for, the mill and elevator company, called up the agent of appellants at Fort Worth by telephone and asked him what he was paying for wheat. Appellants' agent replied, "69½ cents Galveston." Kell then asked what difference he was making in grades, and the agent replied giving the difference in price of the different grades, and telling him that there was 4 cents difference between number 2 and number 4. Kell then said to him, "I book you 2000 bushels of four, soft, 65½ cents, Galveston."

On the same day,—and whether before or after the sending of appellant's letter the record does not disclose,—appellee wrote and mailed to appellants, at Fort Worth, the following letter:

"WICHITA FALLS, Texas, August 7, 1900.
"Mess. C. F. Orthwein's Sons, Fort Worth, Texas:
"Gentlemen.—In confirmation of your phone talk to-day we book sale to you 2000 bushels, 4, soft, 65½ cents, Galveston.
"Yours truly,
"WICHITA MILL AND ELEVATOR CO.,
"Per Kell."

All the wheat involved was sold under the above contract, or under contracts identical therewith and under identically the same circumstances set out, save only a difference as to dates, amounts, grades and prices. Bills of lading were taken in the name of appellee, but indorsed and delivered to appellants prior to the loss.

If the contract of purchase was oral,—and we are inclined to the view that the respective letters of the parties were but a confirmation of the already completed contract,—then there is no question but that the ordinary rule obtains, and upon the delivery of the wheat to the common carrier and the indorsement and delivery of the bill of lading to the appellants, the title vested in them and the transportation was at their risk. Missouri P. Ry. Co. v. Heidenheimer, 82 Texas, 195; Neymeyer Lumber Co. v. Railway Co., 40 Law. Rep. Ann., 534.

It will be observed that there is nothing contained in appellee's letter of confirmation which would in any manner indicate that the company understood the contract to be for Galveston delivery. Nor do we construe appellants' letter to be of different meaning. We think the language, "65½ cents delivered Galveston," means the price, the cost to appellants, of the wheat at that place, and has no reference to the place of delivery. See Neymeyer Lumber Co. v. Railway Co., supra, and authorities there cited; Cameron Mill and Elevator Co. v. C. F. Orthwein's Sons, 120 Fed. Rep., 463. We are strengthened in this view by the fact that the very letter relied upon by appellants to show a contract for delivery at Galveston is silent as to the place of delivery, although the printed skeleton contains a blank space to be filled in where there is a contract place of delivery. We think this is significant, indi-

cating that the place of delivery was not thought to be important, or at least not stipulated, and that the preceding expression, 65½ cents delivered at Galveston," had reference to price only, and not place of delivery, as already stated.

We are further strengthened in this view by the fact that the letter provides for a stop at appellants' elevator at Fort Worth to be cleaned. This is not consonant with the contention that the risk was with appellee. Directing a draft to be drawn with bill of lading attached also evidenced an intention to take title to the wheat and make payment therefor. The fact that directions were given to leave a fair margin is unimportant further than to make certain that no overpayment was made.

This being our construction of the letter, it follows that even though the same is unambiguous, and oral evidence in explanation thereof not admissible, yet as the testimony of the witness Kell was in favor of this construction, no harm could have resulted therefrom.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.