J. & G. LIPPMAN v. JEFFORDS–SCHOEN-
MANN PRODUCE CO. (No. 7058.)

(Court of Civil Appeals of Texas. Galveston. Feb. 28, 1916. Rehearing Denied March 16, 1916.)

1. SALES ⚖️479(8) — RETENTION OF TITLE — QUESTION FOR JURY.

The fact that the sellers of goods, shipping them, attached to the bill of lading a draft for the purchase price made to the order of the seller, does not, of itself, conclusively show an intention to withhold passing of title until the draft is paid.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1428; Dec. Dig. ⚖️479(8).]

2. SALES ⚖️479(8) — RETENTION OF TITLE — QUESTION FOR JURY.

In a suit for the price of potatoes sold to a buyer in Texas and shipped from a point in Maine, where the sellers attached to the bill of lading a draft to the order of the buyers for the purchase price, and inspected the potatoes in transit at New York, billing them to their agents at Galveston, Tex., with instructions to forward to Houston to the shipper's order, the question whether the sellers intended to retain title until payment of the draft was for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1428; Dec. Dig. ⚖️479(8).]

3. SALES ⚖️88—PLACE OF DELIVERY—QUESTION FOR JURY.

In a suit for the price of Maine potatoes sold to a buyer in Texas, where the contract provided that each car should contain a certain amount at $3 per bag, "delivered at Texas common points," while the sellers inspected the potatoes on transshipment at New York, and directed their transfer from steamer to car at Gal-

veston, Tex., the question where the potatoes were to be delivered to the buyers, at a common point or on delivery to the carrier, was for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 248–250; Dec. Dig. ⚖️88.]

4. SALES ⚖️81(5) — DELIVERY — REASONABLE TIME.

Where the sellers of potatoes contracted to deliver to the buyers at a Texas common point, the buyers were not liable for the price unless the potatoes were delivered or tendered at such a point within a reasonable time after the sellers received the order to ship.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 221; Dec. Dig. ⚖️81(5).]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by J. & G. Lippman, a corporation, against the Jeffords-Schoenmann Produce Company. From a judgment for defendants as to the cause of action set forth in plaintiff's petition, and for plaintiff as to defendants' cross-action, plaintiff appeals. Reversed and remanded.

Hunt, Myer & Teagle and Rodman S. Cosby, all of Houston, for appellant. Campbell, Sewall & Myer and John H. Freeman, all of Houston, for appellees.

LANE, J. On the 28th day of March, 1912, J. & G. Lippman, a corporation in the state of New York, and Jeffords-Schoenmann Produce Company, a firm composed of Claud D. Jeffords and Ludwig Schoenmann, of Houston, Tex., entered into a written contract containing the following:

"Parties of the first and second part respectively agree:

"J. & G. Lippman, of New York, first party, have sold to Jeffords-Schoenmann Produce Co., second party, of Houston, Tex., two cars of Maine grown seed potatoes, each car to contain 220 bags of 11 pecks each, at $3.00 per bag, delivered at Texas common points. Shipment from Maine during the months of December, January, and February, buyers' option.

"Parties of the second part further agree to specifications and deposit of $100.00 per car with J. & G. Lippman no later than September 1st. In default of specifications not being furnished by September 1st by parties of the second part, parties of the first part reserve the right to substitute such varieties as they may select. Shipments are to be made at time specified by buyers, unless delayed by providential causes.

"Terms: Sight draft with B/L attached.

"This contract is signed in duplicate and is not subject to countermand.

"[Signed] J. & G. Lippman, by Morris Weslosky, V. Pres.

"Buyers: Jeffords-Schoenmann Pro. & Bkge. Co., by C. D. Jeffords.

"Broker: T. H. Thompson & Co."

On September 1, 1912, the buyers sent to the sellers specifications and $200 on the two cars of potatoes as per contract. On the 8th day of February, 1913, the sellers received a night telegraphic letter at their office in New York from the buyers instructing the sellers to ship the cars of potatoes in question.

The car of potatoes involved in this appeal

was loaded in car N. Y., N. H. & H. 86879, at Goodrich station, in the state of Maine, on 8th day of February, 1913, and were transported to Stockton Springs, Me., and there unloaded from said car into a Bull Line steamer and carried to New York, and then unloaded into the Morgan Line boat, which transported them to Galveston, Tex. The bill of lading upon which these potatoes were shipped to Galveston shows that they were consigned to J. & G. Lippman, "Notify Hawley & Letzerich." They were delivered to Hawley & Letzerich, forwarding agents of the sellers, at Galveston, about the 7th or 8th day of March, 1913, who, under the instructions of the sellers, had them forwarded, on or about the 9th or 10th of March, over the International & Great Northern Railway to Houston, Tex., consigned to the order of J. & G. Lippman, "Notify Jeffords-Schoenmann Produce Co." This bill of lading was sent to the Lumberman's National Bank at Houston with the following draft attached:

"$560.00 less freight, with exchange.
"$561.40.           New York, Feb. 8th, 1913.
"On arrival of car pay to the order of ourselves five hundred and sixty dollars. Value received. Car N. Y., N. H. & H. 86870.
                    "By Morris Weslosky.
"To Jeffords-Schoenmann Produce Co.. Houston, Texas.
"No. 2367.  Accept paid freight bill in part payment of draft attached."

Said car of potatoes arrived at Houston about March 10, 1913. After notice the buyers refused to pay said draft or any part thereof, and also refused to accept said potatoes. The other car of potatoes mentioned in said contract was shipped on the 5th day of February, 1913, practically in the same manner as the one in question, and was accepted by buyers without complaint to sellers until this suit was brought.

The freight due upon said car of potatoes involved in this appeal was $187.38, and, as the same was not paid, the railway company, to whom the freight was due, sold said potatoes for $165, and applied the same to payment of the freight charges.

Appellant J. & G. Lippman brought this suit for $395 against Jeffords-Schoenmann Produce Company, alleging that same was the balance of the agreed purchase price after deducting the $165 received by the railway company for the potatoes. Plaintiff's suit was based on the theory that under the contract a delivery of the quantity and quality of potatoes agreed upon to the carrier at point of shipment was a delivery to defendants at that point, and that then said contract became executed, and the title of said potatoes passed to the defendants, and that the fact that the potatoes were shipped to shipper's order, with bill of lading attached, was not such act as showed that plaintiff retained the title to said potatoes after delivery to the carrier in Maine, but that such acts were for the purpose only of retaining possession of said potatoes until the purchase price was paid, and did not have the effect to retain the title thereto in plaintiff; that plaintiff shipped out the quantity and quality of potatoes called for by the contract in good order promptly after receipt of notice from defendants, and thereby fully performed its part of the contract, and that they were not liable or responsible for any delay in delivery, or for any damage to said potatoes thereafter.

Defendants answered, admitting the execution of the contract of March 28, 1912, and say that they have fully complied with the terms of said contract. They deny that the potatoes shipped by plaintiff under said contract were of the kind and quality ordered by them, and further say that said potatoes so shipped were not such as were ordered by them, and that said potatoes were not shipped within the time called for by said contract, and were not delivered to defendants at Houston, Tex., within the time contemplated by said contract, and not until long after the date upon which they should have been delivered at Houston, and were delivered entirely too late for defendants to use them for seed potatoes. They admit that they refused to pay the draft attached to the bill of lading and receive said potatoes. They say that the car of potatoes never passed out of the possession of the plaintiff, and that the carrier was the agent of plaintiff, and not of defendants. They say that, when the potatoes arrived at Houston, they were scabby, decayed, and not the kind, grade, and quality as ordered by them. They say that from the 21st day of January, 1912, to the 31st day of said month they wrote plaintiff several letters, ordering it to ship said two cars of potatoes, but, as they heard nothing from plaintiff in reply to said letters, on the 7th day of February, 1913, they sent plaintiff a night telegraphic letter ordering it to ship said two cars of potatoes; that one of said cars reached Houston on the 27th day of February, and was received and paid for by them, although not such potatoes as they had ordered, and by reason of the inferior quality of said potatoes they were damaged in the sum of $420, and in reconvention they pray judgment for said sum. They say that the car of potatoes involved in this suit did not arrive in Houston until the 11th day of March, 1913, and that they were refused the privilege of inspecting said potatoes unless they first paid the draft covering the purchase price thereof, and, as the first car received by them was in bad order, they refused to accept said second car without an inspection. They deny that they owe plaintiff anything, but aver that plaintiff owes them for damages on the car of potatoes received and accepted by them in the sum of $420, and for the $100 paid by them on the second car shipped by plaintiff which they refused to accept, a total of $520, for which they prayed judgment.

Plaintiff by supplemental petition denies all the material defensive allegations of defendants' answer. It further says it never received any of the letters alleged to have been written by defendants ordering shipment of said potatoes, and that the only order to ship received by it was the said night telegraphic letter of February 7, 1913, and that it made prompt shipment after receipt of said night letter; that it did not contract to deliver said potatoes to defendants at Houston, Tex., in good condition, but that its delivery to the carrier in Maine was in law a delivery to defendants; that said two cars of potatoes were in good condition, sound, and merchantable at the time they were delivered to the carrier in Maine, and if they were not in such condition upon arrival in Houston, and if they did not arrive in Houston within a reasonable time, such delay and damage was chargeable to the negligence of the carriers in handling said potatoes, and that it is not responsible for such negligence, if any.

The testimony of the witnesses for plaintiff is to the effect that the car of potatoes involved in this appeal were of the quantity and quality called for by the contract, and that they were in good condition when delivered to the carrier in Maine, that they were inspected by J. Hartman, an employé of plaintiff, when being transferred from one steamer to the other about the latter part of February, 1913, at New York, and that they were then in good condition. This testimony stands undisputed. No inspection of these potatoes was made at Houston, as to quantity, quality, or condition, so far as shown by the evidence, and consequently their condition was not shown. Defendants made request to inspect said potatoes after they reached Houston, but permission to inspect was refused by the railway company, unless the draft attached to bill of lading was first paid. The freight on said potatoes was unpaid, and the railway company sold same for $165, and applied the proceeds to payment on freight charges.

The questions at issue in the trial court may be said to have been: First, under the terms of the contract, was the delivery of the potatoes to the carriers in Maine a delivery to appellees, the buyers, or were they to be delivered to appellees in Houston? Second, if they were to be delivered at Houston, were they shipped promptly after receipt of notice to ship had been received by appellant and delivered to appellees in a reasonable time thereafter?

The court instructed the jury selected by the parties as follows:

"You are instructed to return a verdict against the plaintiff in this cause, and in favor of the defendants as to the cause of action set forth in plaintiff's petition, and to return a verdict against the defendants and in favor of the plaintiff as to the cross-action of the defendants."

A verdict was returned and judgment rendered in accordance with such instructions.

From such judgment, J. & G. Lippman have appealed.

[1, 2] While it is true that the fact that the sellers attached a draft for the purchase price of the potatoes to the bill of lading, which is made to the order of the sellers, under the most recent opinions of our courts does not of itself constitute and conclusively show an intention to withhold the passing of the title until the draft is paid (Robinson v. H. & T. C. Ry. Co., 105 Tex. 186, 146 S. W. 537; Orthwein v. Wichita Milling Co., 32 Tex. Civ. App. 600, 75 S. W. 364), we think such fact, together with other facts and circumstances proven, such as an inspection of the potatoes while in transit by the agent of the seller at New York, and the billing of the potatoes to Hawley & Letzerich, agents of the seller at Galveston, with instructions to forward to Houston to shipper's order, etc., should have been submitted to the jury, under proper instruction, for it to find and determine from all such facts and circumstances as to what the intention of the parties was at the time the contract in question was entered into.

[3] We do not think that by the language used in the contract it is made clear whether the potatoes were to be delivered to the buyers at Houston or whether they were to be delivered to the initial carrier in the state of Maine, as the agent of such buyer. The provisions in the contract that "each car to contain 220 bags of 11 pecks each, at $3.00 per bag, delivered at Texas common points," is not entirely clear of ambiguity. It is not clear from this provision, when considered with the contract as a whole, that such provision was for the purpose of fixing the price only of the potatoes to the buyers at Houston, Texas, and that it was not inserted for the purpose of specifying the point of delivery by the sellers, and we therefore conclude that as, under the undisputed facts, the sellers, seemingly at least, assumed some kind of supervision and control over the potatoes, at several points while they were being transported from Maine to Texas, such as inspection at New York, directing their transfer from steamer to car at Galveston by the sellers' agent, etc., the court should have submitted to the jury the question as to where, under the contract, the potatoes were to be delivered by the sellers to the purchasers, and that the court erred in not so doing.

The contention of appellant, however, that the court should have instructed a verdict for it cannot be sustained. The fact that after the potatoes were delivered to the carrier in the state of Maine to be transported to Galveston, Tex., they were, while in transit, inspected at New York by the agent of the seller, that the seller through its forwarding agent at Galveston, surrendered the original bill of lading to the steamship company, which transported the potatoes to Galveston, and took charge of them and forwarded them

from Galveston to Houston, to seller's order, with draft attached to bill of lading, to say the least of it, is not entirely consistent with appellant's contention that the title to the potatoes passed to the buyers at the initial point of shipment in the state of Maine, and from that time were their property and subject to their risk. We think, therefore, the question as to where the potatoes were to be delivered under the terms of the contract should have been submitted to the jury under all the facts and circumstances proved.

[4] Upon another trial the jury should be instructed that, if they should find that under the contract plaintiff was to deliver the potatoes to defendants at a Texas common point, then they will further find whether the potatoes contracted for were delivered and tendered to defendants at such point within a reasonable time after plaintiff received the order to ship.

For the error hereinbefore pointed out, the judgment of the trial court is here reversed, and the cause remanded.

Reversed and remanded.