## CLEMENT GRAIN CO. v. BORDER WHOLESALE COMMISSION CO.* (No. 6643.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 21, 1922. Rehearing Denied Feb. 15, 1922.)

1. **Sales ⊂⇒201(4)—Delivery completed when made to carrier as buyer's agent.**

Where goods are sold and delivered to the carrier in good condition, the delivery is complete, and the carrier who takes charge for transportation thereby becomes agent or bailee of the buyer.

2. **Sales ⊂⇒202(6)—Where sales contract provided inspection before acceptance, delivery completed only at place of inspection.**

Where the terms of a sales contract were cash and provided that delivery and payment were "subject to inspection arrival draft," the terms were such as to permit the right of inspection before acceptance, and, having words of direction in connection with the delivery, the sale did not come under the general rule that delivery is complete when made to the carrier at the place where the goods are received, but title passed where the inspection and payment were to be made.

3. **Sales ⊂⇒202(6)—Goods sold "subject to inspection arrival draft" must be present at destination for inspection.**

A contract under which goods are sold "subject to inspection arrival draft" must be construed to mean the goods should be present at destination for inspection, and, if not up to requirements, consignees are not compelled to receive and pay for same.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subject to.]

4. **Sales ⊂⇒384(1)—Instruction on method of assessing damage for failure to accept grain arriving fit for food and taken back by seller held proper.**

As respects defendant buyer's liability for grain which defendants claimed arrived unfit for human food and was taken back by the seller, an instruction that, if the grain arrived fit for food, then to assess the seller's damages at the difference between the contract price and the price at which the same was finally sold by the seller, and to add the expense incurred by the seller in transporting and treating the grain so as to render it marketable, was proper.

5. **Sales ⊂⇒393 — Where seller repossesses goods refused rule requiring care by buyer does not apply.**

The rule requiring a buyer in possession of goods that he refused to pay for to take proper care thereof to minimize damage until

the seller can repossess is not applicable where the seller comes on the ground to handle them himself, and the goods are tendered to and received by the seller; and the seller cannot, on this ground, deny to the buyer the right to recover the invoice price paid through mistake.

**6. Sales ⬅━170—Time being essential in mercantile contract, buyer may refuse goods for ,trifling delays.**

In mercantile contracts, time being essential, the buyer may refuse the goods even though the delay be trifling.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by S. Villegas & Co. against the Border·Wholesale Commission Company and the Clement Grain Company, and cross-action by the Clement Grain Company against the Border Wholesale Commission Company, and cross-action by the Border Wholesale Commission Company against the Clement Grain Company. From judgment for plaintiffs against the Border Wholesale Commission Company, and from judgment for the Border Wholesale Commission Company against the Clement Grain Company, the Clement Grain Company appeals. Affirmed.

Weatherby & Rogers, of Waco, and T. C. Mann, of Laredo, for appellant.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, for appellee.

COBBS, J. This suit was instituted by L. Villegas & Co. against Border Wholesale Commission Company and the Clement Grain Company, a corporation. It was alleged that the Border Wholesale Commission Company was engaged in the brokerage business as agent of the Clement Grain Company, and, without disclosing its principal, by written contract of February 28, 1918, agreed to sell and deliver to L. Villegas & Co., f. o. b. Laredo, Tex., one carload of No. 3 white sacked corn at $2.62½ per bushel, to be shipped with draft and bill of lading attached with the right of inspection upon the arrival of car of corn, and, if corn was found to be of the kind and quality purchased, Villegas & Co. were to take up draft and bill of lading.

On March 23, 1918, Border Wholesale Commission Company informed plaintiffs of the arrival of the car of corn, and presented samples taken from the car, and, plaintiffs being satisfied, it was of the grade ordered and relying upon the representation that all the corn in the car came up to the samples presented, paid the draft, $2,869.16, and began unloading the car and placing same in the warehouse, and, when 433 sacks had been unloaded, plaintiffs discovered that the bulk of the corn was not up to the samples, but damp, hot, musty, of bad odor, and unfit for human food. The plaintiffs refused to further unload or accept the balance of the corn, notified appellee, and demanded the return of the money. Appellant wired plaintiffs to unload the corn and they would protect them.

In the alternative plaintiffs prayed, if mistaken as to Clement Grain Company being principal and Border Wholesale Commission Company agents, then Border Wholesale Commission Company breached their contract in not furnishing the corn they obligated themselves to furnish and are liable in damages, asked judgment for the $2,869.19 erroneously paid, less $664.23, amount realized from sale of corn. Plaintiffs also prayed for damages for keeping the corn in their warehouse until April, 1920, as rent, the sum of $360.

Appellee admitted plaintiffs' allegations, but denied that it was the agent of appellant, but after making the contract of sale of the corn to plaintiffs it purchased the corn from appellant, who agreed to deliver the said carload of corn of said grade and class, f. o. b. Laredo, Tex. After said carload was accepted and paid for by the plaintiff upon the sample exhibited, and after said Border Wholesale Commission Company had notified appellant of the complaint and request to indemnify plaintiffs against any loss and after plaintiffs accepted the proposition and unloaded the corn and placed the same in their warehouse, it ceased to have anything further to do with it. But, if appellee be held liable to plaintiffs, it prays judgment over against appellant for any recovery had against it.

The appellant's defense was that it was not an undisclosed principal of its codefendant, but sold the corn direct to appellee, who received it, and that when delivered to the carrier in Waco to be shipped to Laredo it was in good condition, and, if damaged, it was because the corn was permitted to remain with the carrier too long in a tight car, where it became heated and thereby damaged.

Appellant also pleaded, by way of cross-action against appellee, that an order was given it for two cars of white sacked corn No. 3, which appellant purchased in bulk in Kansas City and shipped to Waco, where it was sacked and delivered to the carrier for appellee of the proper grade. The corn was in transit some 12 days in a tight box car where the heat was so great as to damage some of the sacks, and, if it did not arrive in Laredo in the same good condition as it was when delivered at Waco, it was chargeable to the negligence and want of care of appellee and his carrier. Furthermore, the damage was slight, and, had it been handled with care, the damage would have been diminished.

Appellant sought to recover of appellee on a contract of March 2, 1918, the price of two cars of white corn at $2.15 per bushel. It was alleged that one of said cars was accepted and the other rejected, which forced ap-

pellant to take said corn and sell the same at a loss of $1,268.70; also sought to recover on a contract of February 18, 1918, the purchase price of three cars of white corn sacked at $2.20 per bushel, to be delivered at Laredo, which arrived at Laredo and remained in the car of the carrier on its tracks for 18 days, causing the corn, on account of the great heat in the car, to become damaged, and appellant was forced to take said car, treat it, and sell it at a loss of $1,540.74.

On March 15, 1918, appellee ordered two cars of bulk white shelled corn, grade No. 3, at $2.03 per bushel, to be delivered at Laredo, Tex., which appellant purchased in the open market and paid for and advised appellee that it was ready to ship said corn, but, the market having declined, appellee refused to receive the corn, and appellant was forced to go into the market and sell it at a loss of $518.57. Appellant prayed for damages on account of the alleged breach and refusal of appellee to accept said corn in the sum of $3,328.01.

Appellee's answer to the cross-action was that it was rejected because the corn tendered was not No. 3 white corn and not fit for human consumption on its arrival at Laredo, because it was hot and musty; that appellant had not complied with its contract, and out of five cars shipped three of the cars had not been of the class and grade ordered by appellee. One of said cars appellee agreed to accept and have screened on condition appellant would pay the cost of screening, which amounted to the sum of $348.81; that appellant refused to pay; so appellee asks judgment for said sum of money.

Trial was before a jury, and the court instructed the jury to return a verdict against L. Villegas & Co., as to the defendant, Clement Grain Company, and against the Border Wholesale Commission Company, in favor of L. Villegas & Co., for the sum of $2,744.68, and the verdict was as instructed; and the verdict was, further, that the Border Wholesale Commission Company have and recover of and from the Clement Grain Company the sum of $1,332.56.

[1] Appellant contends that, when the corn was delivered in good condition on the car at Waco to the carrier to be shipped to appellee, it had fully complied with its contract for the delivery of the same. No question of venue or jurisdiction is involved in this case depending upon the place of delivery. It is well settled, and the general rule is in said cases, that the delivery is complete when made to the carrier who takes charge for transportation and thereby becomes the agent or bailee of the buyer. Guinn v. Texas Drug Co., 219 S. W. 507; J. & G. Lippman v. Jeffords-Schoenmann Produce Co., 184 S. W. 534; Burton & Beard v. Nacogdoches Crate & Lumber Co., 161 S. W. 25; Robinson & Martin v. Houston & T. C. Ry. Co., 105 Tex. 185, 146 S. W. 537.

[2] In this case the terms were cash, and the contract provided the delivery and payment were "subject to inspection arrival draft." The terms, therefore, were such as to permit the right of inspection before acceptance. Hence the contract, containing words of direction, in this case, in connection with the delivery, does not come under the general rule that the delivery is complete when made to the carrier at the place where the goods are received, but it is where the inspection and payment is to be made. Watson v. Landa Cotton Oil Co., 228 S. W. 243. It is true, as said in J. & G. Lippman v. Jeffords-Schoenmann Produce Co., supra, that, while the fact that the seller's draft is attached to the bill of lading does not, of itself alone, "constitute and conclusively show an intention to withhold the passing of the title until the draft is paid, * * * such fact, together with other facts and circumstances proven, such as an inspection of the potatoes while in transit by the agent, * * * should have been submitted to the jury * * * to * * * determine * * * what the intention of the parties was at the time the contract in question was entered into." But here there is no issue of fact on that score for the jury.

[3] There is no material fact here necessary to be found by the jury, because there is no ambiguity in the order. It directs the shipment to be made "to L. Villegas & Co., at Laredo, Tex., * * * terms cash, * * * subject to inspection arrival of draft." If the inspection was to be made before payment of draft, it must be construed to mean the goods should be present for inspection in Laredo, and, if the goods do not come up to the requirements, the consignees were not compelled to receive and pay for the same. In connection with the place of delivery, the appellant, after the rejection of the corn, took possession of it in Laredo, and disposed of that portion refused by the consignee.

[4] Such special charges requested, as set out in various assignments, practically raising the same issue, should not have been given for the reason that they would have misled the jury, and the charge of the court submitted correct issues. It is undisputed that the consignee timely notified appellant of the defect in the corn and its refusal to accept and the demand for return of the money, and that the corn was left by appellant in Laredo to be sold. Further, the requested charges contained instructions on the weight of the testimony. Their refusal was harmless because the jury found in favor of appellant as to one car and assessed damages for $571. The other two cars were taken back by appellant, and the court's charge to the jury, covering the subject, was that, if they "find from the evidence they or either arrived at Laredo in condition for human food, then as to such car or cars so ar-

riving you will assess the damages in favor of the Clement Grain Company and against the Border Wholesale Commission Company at the difference between the contract price of such car or cars and the price at which the same was finally sold by the Clement Grain Company, to which amount you will add as further damages the expenses, if any, you find that the Clement Grain Company necessarily incurred in transporting and treating the corn so as to render the same marketable." There is no complaint made as to the finding of the jury.

[5] The rule requiring a buyer, in possession of goods that he refuses to pay for, to take proper care thereof to minimize damages until seller can repossess himself, or upon his refusal to do so until they may be sold, is not applicable where the seller comes on the ground to handle them himself, and to whom they are tendered and received, and, as in this case, left in the possession of the buyer, and the seller cannot be heard to say the tender and delivery to him was not complete, and deny to the purchaser the right to recover the invoice price paid through mistake. So where the undisputed evidence showed that appellant agreed to take the corn off the buyer's hands, after notice, at the place of delivery, the buyer can no longer be held for the care or disposition of the goods, and the charges raising such issues would have been misleading and erroneous.

Appellee had the right to reject the last two cars of corn because the time had expired in which to ship the corn. This was undisputed. The right in such cases to countermand the order in the absence of any other fact becomes a matter of law; hence there was no issue to be submitted to the jury. The written contract provided that the shipment was to be made within 10 and 15 days respectively from their dates, and the evidence is undisputed that the time had passed. Even more so would it be true where the market is declining, as shown in this case. The date of the contract was March 15, 1918. The contract reads: "Time of shipment—one car within 10 days; one car within 15 days." It was countermanded April 3 or 4, 1918. The order was not countermanded until 8 days after one car should have been shipped and 4 or 5 days after the other should have been shipped. No excuse was shown therefor, or waiver alleged. It has been held in mercantile contracts, time being essential, the buyer may refuse the goods, even though the delay be very trifling. It was shown corn had declined and was declining, and that appellant knew appellees were brokers. To have taken the corn after that time would have caused an injustice to appellee which the delay of appellant caused.

Five cars of corn were involved in this suit. The first car was the one shipped to Villegas & Co., and under the undisputed evi-

dence appellant was liable for the damages. The second and third were shipped to Laredo, rejected by appellee, and sold by appellant at Blessing, as to which the trial court instructed the jury that, if they found that the cars arrived at Laredo in good condition and were allowed to remain on the tracks unopened by appellee, the latter would be responsible to appellant for all damages resulting therefrom. The jury found in favor of appellant on one of these cars, but made no mention of the other, but appellant makes no complaint of the finding of the jury.

We have examined all the assignments of error and propositions thereunder, and, if any error was committed, it was harmless, and, so believing that the case has been fairly tried and substantial justice administered, we overrule all of said assignments, and affirm the judgment of the trial court.