### WILLITS & PATTERSON v. HOUSTON PACKING CO.   (No. 8547.)* ·

(Court of Civil Appeals of Texas. Galveston. Nov. 21, 1924. Rehearing Denied Jan. 8, 1925.)

1. **Sales ⬤⇒418(2)—Buyer's damage claims held determinable on basis of place of delivery where goods were loaded.**

Under contract of sale, providing that goods are for buyer's account and risk as soon as landed from carrier and ordered tendered or loaded on cars, place of delivery was at loading point, and buyer's damage claims referable to and determinable on basis of such fact.

2. **Sales ⬤⇒418(9)—Measure of damages for failure to deliver oil of quality contracted for stated.**

Buyer promptly rejecting·car of oil in toto as not of quality contracted for, and reselling it to seller who offered highest price, held entitled, as on rescission of contract, to purchase price paid for kind of oil ordered, and necessary and reasonable expenses to which subjected by seller's breach, less resale price, though market value at time of delivery to carrier did not exceed resale price.

3. **Sales ⬤⇒181(5)—Testimony of buyer's chemists as to condition of oil on arrival at destination held admissible.**

In buyer's action for breach of contract by failure to ship oil of quality ordered, testimony

of plaintiff's chemists that samples of oil, taken from bottom of tank car, in which shipped and returned, were contaminated with mineral oil and otherwise in such condition as to show impossibility of its being of quality called for when loaded, after taking probable effect of long journey during hot weather into account, *held* admissible, in absence of evidence that car was tampered with, though no affirmative proof was made that it was not tampered with.

### 4. Customs and usages ⚖⚎17 — Special issue and testimony as to trade customs affecting matters covered by written contract erroneous.

Submission of special issue whether oil, when loaded for shipment, was so contaminated with mineral oil as not to be Oriental crude cotton seed oil contracted for, "as said term was generally understood by trade," and admission of testimony as to trade customs affecting sale, condition, and delivery of such oil, *held* erroneous; obligations being specifically fixed by written contract.

### 5. Trial ⚖⚎351(5) — Special issue and testimony as to trade customs affecting matters covered by written contract held harmless error.

Submission of special issue whether oil, when loaded for shipment, was so contaminated as not to be Oriental crude cotton seed oil contracted for, "as said term was generally understood by trade," and admission of testimony as to trade customs affecting sale, condition, and delivery of such oil, as to which obligations were fixed by written contract, *held* harmless error, in view of special issue submitting question of contamination unconditionally.

### 6. Trial ⚖⚎133(6) — Counsel's reference to matters not involved held not prejudicial error.

In buyer's action for breach of contract by failure to ship oil of quality contracted for, reference by plaintiff's counsel in jury's presence to other cars of oil not directly involved, but included in same contract, and to settlement between parties as to them, *held* not prejudicial error, where court directed jury not to consider such references nor similar ones by defendant's counsel.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by the Houston Packing Company against Willits & Patterson, a corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Rodman S. Cosby, and Jas. A. Baker, all of Houston, for appellant.

Bryan, Dyess & Colgin, of Houston, for appellee.

GRAVES, J. These two corporations, appellant being of California and appellee of Texas, entered into a written contract whereby the former agreed to sell and deliver to the latter a car of Oriental crude cotton seed oil, 4 to 5 per cent. acid, at 17 cents per pound, f. o. b. coast (meaning the Pacific coast), shipment to be made during July or August following the making of the contract in June; appellant duly shipped a car of oil from San Francisco to appellee at Houston, at the same time drawing a draft, with bill of lading attached, upon it for the agreed purchase price of the Oriental crude contracted for, which draft the appellee received and paid before the arrival of the car; when the car later reached Houston, the appellee had samples of the oil it contained examined by chemists, and on their report to that effect, rejected it as being contaminated with mineral oil, and not the thing contracted for. This rejection was at once telegraphed to appellant, under notice that, if it did not accede to the same, appellee would sell the oil for appellant's account and hold it for the difference between the price appellee had so paid, in addition to freight, demurrage, and other expenses of handling the car, and the best price obtainable on the market; appellant having refused to accept the rejection, appellee resold the oil to the appellant itself for 13 cents per pound, f. o. b. the Pacific coast, its bid of that amount being the highest price offered.

Appellee then brought this suit against appellant for the breach of their contract of sale, alleging that the car shipped was contaminated with mineral oil, and not the kind agreed upon, laying its damages at the difference between the total amount it had been out thereon—that is, the 17 cents per pound paid on the draft, together with expenses for freight, demurrage, and handling—and the 13 cents per pound it had received on the resale, to wit, the sum of $3,928.04, with some interest.

Appellant answered with denial that the oil when delivered by it was so contaminated, asserted that it then in all respects met the specifications of the contract, and charged that there had been a decided fall in the market price of such oil between that date and the filing of this suit.

Issues were joined between the litigants before a jury as to whether or not the oil as delivered met the requirements of the contract, and in answer to questions submitted to them they found in substance (1) that the oil when loaded in San Francisco was contaminated with mineral oil, and to such an extent "as not to be 'Oriental crude cotton seed oil 4 to 5 per cent. free fatty acid,' as said term was generally understood by the trade in the summer of 1919"; (2) that it was then resold by appellee for the account of appellant at the highest price obtainable, at a loss to the former, including its reasonable and necessary expenses in handling the oil prior to resale, in the sum declared upon, and interest thereon to the date of the trial. Judgment against appellant for the amount so found followed, and it seeks relief therefrom through this appeal.

---

⚖⚎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

No attack is made upon the findings of the jury as being unsupported by the evidence, but, under a number of propositions two leading contentions are advanced upon appeal, first, that the uncontradicted admissible testimony showed that no breach of the contract had occurred, in that appellant was shown to have delivered the identical kind of oil therein called for to the carrier at San Francisco, the place where the contract bound it to make delivery; second, that, even if a breach took place as claimed, the appellee's own testimony failed to show it had suffered any damage, since it disclosed that the market value of the oil contracted for had so fallen between the date of this contract and the time the car here involved was shipped to Houston that it did not exceed the 13 cents received for this oil on the resale, that appellee's loss therefore was wholly due to fluctuation in the market value of such oil, a result for which appellant could not be held responsible.

[1] In addition to what has already been recited concerning it, paragraph 2 of the contract runs as follows:

"The goods are for buyer's account and risk as soon as landed from the carrier, and ordered tendered or loaded on cars and proper B/L executed if for reshipment via rail."

[2] We agree with appellant that this provision clearly fixed the place of delivery of the oil at San Francisco where it was loaded (Robinson & Martin v. Houston & Texas Cent. R. Co., 105 Tex. 185, 146 S. W. 537; Orthwein v. Elevator Co., 32 Tex. Civ. App. 600, 75 S. W. 364), and as a consequence it is further true that appellee's damage claims are referable to and determinable upon the basis of that fact; but we do not agree that it was shown either that no breach of the contract occurred, or that appellee suffered no damage. Appellant's conclusion that appellee suffered no damage because, perchance, the market value of Oriental crude may have been at that time about what this oil brought when so resold, 13 cents per pound, is drawn from an erroneous premise; the vice lies in the assumption that appellee could at most only recover on the basis of the market value of such oil as was contracted for at the time and place of the breach, but, under the facts here, that was not the measure of the latter's damage; it promptly rejected the car of oil tendered in toto as not being the thing ordered, otherwise proceeding as has been above stated, and therefore, if the oil sent was shown not to be the kind agreed upon, was entitled, under well-settled authority, to recover as under rescission of the contract the purchase price it had already paid for the kind of goods it really wanted, together with the necessary and reasonable expenses to which it had been subjected by appellant's failure to perform the agreement as made. Simpkins on Contracts and Sales (3rd Ed.) c. LXXXIII, also pp. 622–624, and cited cases; Hunt County Oil Co. v. Scott, 28 Tex. Civ. App. 213, 67 S. W. 451; Engine Co. v. Peveto (Tex. Civ. App.) 150 S. W. 279; Wright v. Davenport, 44 Tex. paragraph 3 of syllabus, and pp. 168, 169.

This was what was sued for, as well as what the jury allowed; no question has been raised as to the reasonableness of the expenses incurred, the contract price was 17 cents, the oil in the resale brought 13 cents on the f. o. b. San Francisco basis, and the balance struck between what appellee was thus out on the transaction, and what it got back left the sum for which the judgment in its favor was rendered; so far as amounts were concerned, it therefore got no more than just compensation.

[3] Having thus treated appellant's two main assignments inversely to the order of their presentment, we recur to the claim that no breach of the contract was shown.

This rests upon the view that, since Willits & Patterson's obligation ceased when it delivered the oil to the carrier at San Francisco, and the testimony of its witnesses was to the effect that when loaded there the oil did not contain minerals but was just what the contract called for, there being neither other direct testimony offered concerning its condition at that point nor anything indicating the sort of treatment the car received, or that it had not been tampered with en route, testimony as to its condition on arrival at Houston one month later was not receivable, because in no wise tending in such circumstances to show the condition back at San Francisco, and therefore the state of the actual evidence was such as to make it undisputed that appellant did not breach but complied fully with its obligation.

Upon this deduction and the further one above referred to, that measured by the market value of the oil at the time of resale, appellee suffered no damage, appellant sought a peremptory instruction in the trial court.

Obviously, from what has been said, there was no error in the refusal to accord it in response to this last-mentioned ground, nor do we think there was as to the preceding one; while it is true the car was one month and one day during the summer time en route from San Francisco to Houston, and no affirmative proof was made that it was not tampered with during the trip, still, under the undisputed evidence, the shipment was, not only a through one between those points in the same tank car, but on the resale it was likewise returned therein to Los Angeles, Cal., and not a circumstance raising even a surmise that it was on either journey tampered with appeared; the trial court, over appellant's objection, permitted the chemists of the appellee to testify that on arrival of the car at Houston they took from the bottom of it samples of the oil and examined it, finding it to be contaminated with mineral oil, and otherwise to be in such condition, especially as to free fatty acid content, fluor-

escence, and other inherent defects, as in their opinion made it impossible for that oil to have been the quality called for in the contract when loaded at San Francisco, after taking into due account the probable effect of its long journey during hot weather; they were also permitted to illustrate their views before the jury, with samples of oil under different lights, etc. In the circumstances, we are not prepared to hold that error was committed in the receipt of this evidence, especially so in view of the fact that, on the return of this oil to Los Angeles after the sale back to appellant, in the same car, it was there again examined by its same chemist and found by him to be in practically the same condition as when it first left San Francisco, thereby rebutting any inference that any contamination it may have contained occurred in transit. This situation clearly distinguishes the case, we think, from Cage v. Amsler (Tex. Civ. App.) 217 S. W. 1095, strongly relied upon by appellant in support of its argument that testimony as to condition of the oil at Houston was irrelevant and immaterial.

In the Cage Case the sole inquiry was as to the weight at Houston of goods shipped there in loose sacks from the interior, not, as here, as to some inherent quality of a liquid shipped all the way in the same closed container, and this court found as an affirmative fact the very thing appellant's own evidence negatived in this instance, as follows:

"The goods were shown to be subject to shrinkage—even by the testimony of the seller's agent—they were loaded 50 miles distant from the point of delivery, were delayed for 13 days before being tendered to the purchaser, and were not shown on arrival at Houston to be in the same condition as to the number of sacks and the quantity in each as when shipped."

Here, as before recited, the uncontroverted evidence showed that the oil went through from San Francisco to Houston, and thence back again to Los Angeles in the same tank car, samples being merely drawn from the bottom of it at Houston, and appellant's own expert chemist testified he examined the shipment both before it left San Francisco and after it returned to Los Angeles, and found it in essentially the same condition on each occasion.

Under such a state of facts, the receipt of the opinion of experts who examined the samples of the oil taken at Houston that its chemical condition there indicated that it must have been contaminated with mineral oil when put in the car at San Francisco 30 days before, as tending to prove such original contamination, is a very different thing from saying that mere weight of loose goods at one point may not be received as indicating their weight many days later at a distant one, when they are shown to be in fact subject to shrinkage, and not shown at the

latter point to be the same in either quantity or condition. The case referred to is therefore not analogous to the one at bar, nor are others cited that are.

Under these conclusions, the assignments complaining of the refusal of a peremptory instruction, of the receipt of the testimony as to the condition of the oil at Houston, including the use of samples of other oil before the jury in illustration of the opinions of the chemists, and as to the measure of damages applied by the court, are all overruled.

[4, 5] The objection made by appellant to special issue No. 2, as submitted by the court, that it improperly appended to the inquiry as to whether the oil when loaded at San Francisco was so contaminated with mineral oil as not to be Oriental crude cotton seed oil, 4 to 5 per cent. free fatty acid, the clause, "as said term was generally understood by the trade in the summer of 1919," is well taken, since the written contract specifically fixed the obligation in this respect, and the understanding of the trade had nothing to do with it; but the error is a wholly harmless one, special issue No. 1 having submitted the same inquiry unconditionally.

The same thing may be said concerning appellant's objections to the testimony of the witnesses Tilson and Maurin in regard to the customs of the trade affecting the sale of cotton seed oil, and as to what constituted a good condition and delivery of oil; all these matters were fixed by the written contract between the parties, and therefore evidence of the customs of the trade with reference to them was inadmissible. Alexander v. Heidenheimer .(Tex. Com. App.) 221 S. W. 942. But since the material inquiry, that is, whether or not the oil was contaminated with mineral when loaded at San Francisco, was independently determined, how the receipt of this improper testimony could have injured appellant is not perceived.

[6] The reference made by appellee's counsel in the presence and hearing of the jury to two other cars of oil not directly involved in this suit, but which had been included in the same original contract, and to a settlement had between the parties as to them, did not in the circumstances prejudicially affect appellant's rights; on its objection to the injection of these matters as having to do with something not involved in the suit, the court held them immaterial, and directed the jury not to consider them; whereupon, on cross-examination of the witnesses, appellant's counsel himself again went into the same proceedings, bringing out in the jury's presence his theory of why the settlement for the other two cars had been made; appellee's counsel having in turn objected, the court then finally instructed the jury not to consider the statements of counsel for either side. While the whole subject of the other two cars was immaterial, appellant is cer-

tainly, we think, in no position to complain of the references to them under these conditions.

From what has been said it is apparent that we think the trial court's judgment should be affirmed. That order has been entered.

Affirmed.