DAVIS et al. v. COX.   (No. 654.)

(Court of Civil Appeals of Texas. Beaumont. March 14, 1921. Rehearing Denied March 23, 1921.)

1. Mortgages ⊜39 — Whether instrument in the form of deed was intended as a mortgage was for jury.

In trespass to try title, in which plaintiffs claimed that instrument in the form of a general warranty deed executed by their ancestor to defendant's predecessor, on predecessor's execution of notes to ancestor's creditors, was in fact a mortgage and was void under Const. art. 16, § 50, because the land was a part of the ancestor's homestead, the question of whether it was intended as a mortgage was for the jury.

2. Evidence ⊜265(5)—Defendant's admission that common source of title was in plaintiff's ancestor, not an admission of ancestor's title at time of death.

In trespass to try title, defendant's admission that plaintiff's ancestor was the common source of title did not constitute an admission that the title was in such ancestor at time of his death, but merely that both parties were deraigning title from him or through him, entitling either to show that his title from such common source was the superior title.

3. Vendor and purchaser ⊜85—Facts held insufficient to submit question of rescission.

In trespass to try title, facts held insufficient for submission of question of whether there had been a rescission of a sale of the land by plaintiff ancestor to defendant's predecessor.

Appeal from District Court, Polk County; J. L. Maury, Judge.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by Caroline Davis and others against C. J. Cox. Judgment for defendant, and plaintiffs appeal. Affirmed.

S. H. German, of Livingston, and O. S. York, of Galveston, for appellants.

Campbell & Murphy and C. Bethea, all of Livingston, for appellee.

HIGHTOWER, C. J. This suit was originally filed by Caroline Davis, widow of Emanuel Davis, deceased, and certain children of Caroline and Emanuel, who sued as heirs at law of Emanuel Davis, deceased, on August 20, 1912. The form of the action was a suit in trespass to try title to 80 acres of land in Polk county, which was alleged to be a part of a 125-acre tract, which constituted the homestead of Emanuel and Caroline Davis. In addition to the action of trespass to try title, plaintiffs also claimed title under the 3 and 5 years' statutes of limitation. They also, by special plea, attacked a certain judgment which had been rendered by the district court of Polk county in favor of W. E. Fitze against Emanuel Davis in November, 1900, under which judgment the land in controversy was sold by the sheriff, and was bought in by Fitze. This judgment and sheriff's deed were alleged to constitute a cloud upon the plaintiffs' title, and was prayed to be removed. At that time, the appellee, C. J. Cox, was the only defendant, and his answer consisted of general denial, plea of not guilty, and estoppel, and he specially pleaded and relied upon, as a link in his chain of title, the judgment in favor of W. E. Fitze against Emanuel Davis, above mentioned, and the sheriff's deed thereunder, and sought to uphold the same; and, in addition, also interposed as a defense the statutes of 3, 5, and 10 years' limitation.

Afterwards the plaintiffs, Caroline Davis and said heirs of Emanuel Davis, amended their petition, by making one Allen Bailey a party defendant, and sought recovery of the land as against him also.

The case proceeded to trial at that time, and resulted in a judgment in favor of Cox for the 80 acres of land in controversy. From that judgment an appeal was taken by the plaintiffs, and was reversed by the San Antonio Court of Civil Appeals, and the opinion of that court on that appeal is reported in 176 S. W. 931. None of the questions, however, which are now before this court for determination were passed upon or involved in that appeal. The case was again called for trial in the lower court at the December term, 1920, at which time Caroline Davis was dead, and the action was prosecuted by the legal heirs of herself and Emanuel Davis, and Cox was again successful and recovered the 80 acres of land in controversy. After their motion for new trial was overruled, the plaintiffs prosecuted an appeal to this court.

The trial was had with a jury, and the case was submitted upon two special issues, which were as follows:

"(1) Was the instrument executed by Emanuel Davis and Caroline Davis to Allen Bailey, on November 30, 1897, a pretended sale of the land therein described for the purpose of securing a debt due by Emanuel Davis to W. E. Fitze? You will answer this question, 'It was,' or, 'It was not,' as you may find the facts to be by a preponderance of the evidence."

The jury answered: "It was not."

"(2) You are instructed that by 'peaceable and adverse possession' is meant an actual, continuous, visible, and hostile appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another. With definition in mind, you will answer the following question: Did the defendant, C. J. Cox, by himself or through his tenants, have peaceable and adverse possession of the land sued for, cultivating, using, or enjoying the same, under a deed duly registered, and paying taxes thereon, for the full period of 5 years before the 20th day of August, 1912? You will answer this question, 'He had,' or, 'He had not,' as you may find the facts to be from the preponderance of the evidence."

To this the jury answered: "He had."

Upon this verdict, motion for judgment was made by both parties, and that of the appellee, Cox, was granted, and that of appellants overruled, to which they excepted.

The first assignment of error, which is submitted as a proposition, challenges the answer of the jury on the first issue, on the ground that the same is wholly without support in the evidence, and that the undisputed evidence showed that the instrument executed by Emanuel Davis and Caroline Davis to Allen Bailey, on the 30th day of November, 1897, purporting to be a deed conveying to Bailey the 80 acres of land therein described, was, in fact, only a mortgage, and was intended by the parties thereto to be such, for the purpose of securing W. E. Fitze in the payment of a debt owed by Emanuel Davis to him.

In November, 1897, Emanuel and Caroline Davis owned a tract of land of approximately 125 acres, which constituted their homestead. It appears that at that time Emanuel Davis was indebted to W. E. Fitze, who was a merchant in the town of Livingston, in the sum of $246.85, and that Fitze was trying to collect this indebtedness. Emanuel Davis and his wife, Caroline, were negroes, and there was a negro school-teacher in the community, Allen Bailey, who, it seems, was their friend and neighbor. Allen Bailey learned that Fitze was threatening to institute criminal proceedings against Emanuel Davis, unless the latter would pay Fitze's account, and Bailey informed Emanuel and Caroline Davis of this fact, and it was agreed between the three—that is Emanuel, Caroline, and Bailey—at the suggestion of Emanuel Davis, that he and Caroline should

convey to Bailey enough of their homestead tract of 125 acres to pay off the debt of $246.85 owed Fitze, and that if such an arrangement could be made with Fitze, Allen Bailey would purchase so much of the homestead tract as was necessary to pay off the Fitze debt. Thereafter Allen Bailey went to Livingston and saw Fitze, and told him about the understanding he had had with Emanuel and Caroline Davis, and that if it could be arranged so that his deed could be secured, and Emanuel would not be prosecuted, he would close the deal with Emanuel and Caroline, and would satisfy Fitze. Just what all the details of this understanding between Allen Bailey and Fitze were is not disclosed by the record. Anyhow, on the 30th day of November, 1897, Emanuel Davis and Caroline Davis executed to Allen Bailey a general warranty deed to a specific 80 acres of land, which was a part of the 125-acre homestead tract, and in consideration therefor Allen Bailey executed and delivered to Emanuel Davis two notes in the sum of $200, each bearing 10 per cent. interest from date, and payable 1 and 2 years, respectively, thereafter. In other words, the first note was payable October 1, 1898, and the second October 1, 1899. The deed to Bailey from the Davises expressly retained the vendor's lien to secure the payment of the purchase money for this 80 acres, and the notes executed by Bailey also expressly recited that the vendor's lien was retained to secure their payment. On the same day, Emanuel Davis executed, in favor of Fitze, his note for $246.85, which represented the account he owed Fitze, which note bore interest at the rate of 10 per cent. per annum from its date. This note was made payable 1 year after date, or on the 1st day of October, 1898, and it was understood that it was to be indorsed by Allen Bailey, which was done, and the note was accepted by Fitze. There was no other consideration to be paid by Allen Bailey for the 80 acres of land in controversy, but the two vendor's lien notes executed by him represented the entire consideration for the land.

[1] It is the contention of appellants that at the time of this transaction between Emanuel and Caroline Davis and Allen Bailey, it was not the intention that the deed to him should be an absolute conveyance of the land, and that it was not the intention of the parties that Allen Bailey should ever pay one cent of the consideration represented by the notes executed by him, but that it was intended by the parties that the transaction should take the form that it did for the purpose merely of securing Fitze in the payment of the debt owed him by Emanuel Davis, and that as a matter of law the transaction constituted but a mortgage upon the 80 acres of land described in the deed, which was a part of the homestead of Emanuel and Caroline Davis, and that it was void under article 16, § 50 of the Constitution of this state.

As we have before shown, the jury found that the deed executed by Emanuel and Caroline Davis to Allen Bailey was not intended as a mortgage, as contended by appellants, but, in effect, that it was the intention of Emanuel and Caroline Davis to convey the 80 acres of land to Bailey, as the face of the deed purported. It is undisputed in the record that Allen Bailey has never paid anything on these purchase-money notes.

On the trial of the case, the evidence of Allen Bailey and that of Maria Davis, who is a daughter of Emanuel and Caroline Davis, was the only material evidence bearing upon the issue as to whether the purported deed was, in fact, a deed, or was merely intended by the parties as a mortgage, as claimed by appellants; that is to say, the evidence of these two witnesses was all there was upon that issue, other than the transaction itself, including the execution and delivery of the several notes, all of which took place upon the same day.

Allen Bailey testified, substantially, among other things, that when he learned that Fitze was threatening Emanuel Davis with a criminal prosecution, as we have above stated, he, on account of his friendship for Emanuel, felt solicitous in his behalf, and merely intervened with Fitze for the purpose and with the view of preventing any prosecution against Davis, and that it was at Davis' suggestion that he agreed to buy the 80 acres of land in controversy, and that he intended to pay for the land just as he had agreed to do, and that this fact was fully discussed with Caroline Davis, and that she herself stated, substantially, that the land ought to be sold and the debt of Fitze paid with its proceeds, and that she was willing to the transaction as finally consummated.

Bailey further testified that immediately after the 80 acres of land was deeded to him, he took possession thereof, and used the same during the following year, 1898, and claimed it as his own, and also continued the following year, 1899, in possession thereof, claiming it as his own, but paid rent to Emanuel Davis for the year 1899, in order to assist Davis to more easily pay off the $246.85 note which he owed Fitze, and upon which Bailey was indorser. He further testified that he made arrangements to raise the $400 to pay off the notes executed by him for the land, and that shortly after the first note became due, which, as we have stated, was on October 1, 1898, he went to Livingston, prepared to pay both the notes which had been executed by him, and that he was assisted in raising the necessary money by Mr. Ralph Leggitt, who accompanied him to Livingston on the day that he went to pay off these notes; that when he

and Mr. Leggitt reached Livingston for the purpose of paying off these notes, they interviewed Judge Feagin, an attorney at law of Livingston, about the matter, and that he and Mr. Leggitt were informed by Judge Feagin that, if the transaction between Emanuel and Caroline Davis and Allen Bailey constituted only a mortgage, the same would be invalid, and that probably Allen Bailey would not get title to the land, even if he should pay off the notes that had been executed by him, and at that time held by Fitze as collateral to secure the payment of the $246.85 note. He testified in this connection that it had been rumored, which rumor he had heard, that some day the children of Emanuel and Caroline Davis would probably institute suit for the recovery of this 80 acres of land, on the ground that the deed to Bailey from their father and mother was merely a mortgage, and was void because the land involved was a homestead at the time of its execution, and that in the event such course should be taken by the said children he might lose the land, as well as the money paid for it; that after consulting with Judge Feagin about the matter, Mr. Leggitt stated to Bailey that if he were in Bailey's place he would not pay the notes under the circumstances, but that if he still desired to do so, he (Leggitt) would assist him, as agreed.

Bailey testified further that after this consultation with Judge Feagin and this admonition from Leggitt he decided not to pay off the notes executed by him, and, substantially, he testified that he, about that time, agreed with Emanuel Davis that if he would go ahead and pay off the $246.85 note which Emanuel had executed in favor of Fitze, and on which Allen Bailey was indorser, that he (Bailey) would reconvey the land to Emanuel Davis and get rid of the matter. There the negotiations between Allen Bailey and Emanuel Davis and wife seem to have ceased, and Emanuel Davis never paid off the $246.85 note to Fitze, and in the fall of 1899 Fitze brought suit in the District court of Polk county on the $246.85 note against Emanuel Davis, as principal and Allen Bailey, as indorser, and in his petition in that case alleged the execution of the deed from Emanuel and wife, Caroline, to Allen Bailey, and the execution of the vendor's lien notes by Allen Bailey, and their delivery to him by Emanuel Davis, and that they were held by him as collateral security for the payment of the $246.85 note, and alleged that by reason of being the holder of the said vendor's lien notes he was entitled to have the vendor's lien on the 80 acres of land in controversy foreclosed, in satisfaction of his debt. In that suit Emanuel Davis and Allen Bailey both waived service of citation, and judgment was rendered in favor of Fitze against Emanuel Davis, as principal, and against Allen Bailey, as indorser, on the $246.85

note, and it was also decreed that Fitze was entitled to have the vendor's lien foreclosed, as represented by the two notes of Allen Bailey to Davis, and the 80 acres of land in controversy sold under the judgment to pay Fitze's debt, all of which was done. Thereafter the sheriff of Polk county, under order of sale, issued upon the judgment, sold the 80 acres of land in controversy to Fitze, and made him a deed therefor. This deed from the sheriff was dated March 6, 1901. On March 7, 1901, Fitze executed a deed to the land in controversy to the appellee, Cox, which deed was promptly placed of record by Cox. At that time one of the children of Emanuel and Caroline Davis was living upon the tract of land described in the deed to Allen Bailey, but soon thereafter removed from the land, and, as we gather from the record, none of the Davises were thereafter in actual possession of the 80 acres in controversy, but, on the contrary, they built a fence which cut off completely the 80 acres in controversy from the balance of the Davis homestead tract, and after this 80 acres was so fenced off from the balance of the homestead tract none of the Davises ever had actual possession of any part of the 80 acres, at least until about the filing of this suit, which, as before stated, was on the 20th day of August, 1912.

Emanuel Davis died in April, 1902, and Caroline Davis died in January, 1920, and neither, of course, testified on the trial below, nor did Fitze testify on the trial, but whether he was living or not the record does not disclose.

It will be observed from what we have stated that Allen Bailey testified, substantially, that the instrument of November 30, 1897, executed by Emanuel and Caroline Davis to him, was just what on its face it purported to be, that is, a deed to the land in controversy, and that at the time of that transaction it was fully intended by all parties to it that Allen Bailey was to pay for the land the full consideration of $400, as evidenced by the two notes which he had executed, and which were recited in the deed. There was no evidence indicating that $400 was not the full value of the 80 acres conveyed by the deed to Bailey, and in the absence of such evidence we assume that $400 at that time was a fair and reasonable consideration for the 80 acres mentioned in the deed. Allen Bailey's evidence, to the effect that shortly after his note was due he procured the money necessary to pay off both notes, and went to Livingston, in company with Mr. Leggitt, for that purpose, is without dispute in this record. Neither Judge Feagin nor Mr. Leggitt was called as a witness to contradict Allen Bailey on this point, and if it be true that he raised the money, as stated by him, to pay off these purchase money notes, and went to Livingston, where the notes then were, with the avowed pur-

pose of paying these notes, such action and purpose on his part were strong circumstances tending to show that the instrument from Emanuel and Caroline Davis to Bailey was not, in fact, intended as a mere security for debt, as claimed by appellants, but rather strongly tended to show that the transaction was a bona fide one, and that it was the intention of Emanuel and Caroline to convey the land in controversy to Bailey by that instrument, and that it was the latter's intention at the time of that transaction to purchase and pay for the same. The record discloses no reason why Judge Feagin and Mr. Leggitt were not called as witnesses to contradict Allen Bailey as to his having made arrangements for the money to pay for this land, and his avowed purpose in going to Livingston to pay off his notes, and it occurs to us that the failure to contradict Allen Bailey in this connection, if it could be done, by the testimony of Judge Feagin and Mr. Leggitt, or at least one of them, was strongly calculated to lead the jury trying this case to believe that Bailey's evidence in that connection was true, and, if so, we would hesitate before holding that the jury was not warranted in finding that the deed of November 30, 1897, was not a pretended sale of the land to Bailey for the purpose of securing a debt owed Fitze, but that, on the contrary, that instrument was intended as a deed, in fact, conveying the land to Bailey. It is true that Maria Davis, who testified on the trial, stated, substantially, that Allen Bailey, on perhaps more than one occasion, had admitted to her that the deed from her father and mother to him was only intended as a mortgage to secure Fitze, and that he (Bailey) had really not intended to buy or pay for the land, but it must be remembered that Maria Davis was a highly interested witness in the case, being one of the plaintiffs, and it was the province of the jury to give her evidence in that connection such weight as the jury might see proper, or to disregard it in toto, if they saw proper, in arriving at a verdict. Thus far we forgot to mention the further fact relied upon by appellants, in connection with the assignment now under consideration, that Emanuel Davis, notwithstanding the deed to Allen Bailey, rendered the land in controversy for taxes for the years 1898, 1899, and 1900. After that time, however, there was no further rendition of the land in controversy for taxes by any of the Davises, notwithstanding the fact that Emanuel Davis lived until April, 1902, and Caroline did not die until January, 1920. Upon the evidence as a whole, bearing upon the issue as to whether the deed to Allen Bailey or the land in controversy was intended by the parties thereto merely as a mortgage, and not a deed, in fact, we have concluded that we would not be authorized to hold, as a matter of law, that the jury were unauthorized to find that the instrument was a deed, as it purported to be, and not merely intended as a mortgage, as claimed by appellants.

Several cases are cited in appellants' brief, as sustaining their contention that the evidence was of such character, as a whole, to compel the conclusion, as a matter of law, that said instrument was only a mortgage, and that the same was void under article 16, § 50, of our state Constitution, because executed upon a part of the homestead. Among the cases cited in that connection is that of Sanger v. Brooks, 101 Tex. 115, 105 S. W. 37. In that case, as we read the opinion, there seems to have been really no dispute that the instrument under consideration was intended merely as a mortgage between the purported grantors and the grantee, but the main contention by the party seeking to uphold the instrument was that he was an innocent purchaser of the land involved, being a part of a homestead, and that he ought therefore to be protected as such, notwithstanding the character of the instrument. The court in that case, as we read it, merely decided that the contention of innocent purchaser, under the facts, could not be sustained.

Another case cited in this connection by appellants is that of Wadsworth v. Powell, 191 S. W. 169. In that case it was found as a fact in the trial court that the instrument under consideration was intended by the parties to it as a mere security for debt, and under the facts of the case the appellate court upheld the finding of the trial court, and, it being undisputed that the land involved was a part of the homestead, it followed that the instrument was held invalid.

Another case cited in the same connection is that of Bailey v. Bailey, 188 S. W. 264. We are unable to ascertain from the opinion of the appellate court in that case whether there was any dispute upon the trial as to the character of the instrument; that is to say, whether it was intended by the parties to it as a deed, in fact, or whether merely as a security for debt, but it does appear from the opinion that the trial court found that the instrument there under consideration was but a mere security for debt, and, being upon a part of the homestead of the vendors, would have been void but for other reasons stated by the trial court, and on appeal the appellate court merely upheld the finding of the trial court as to the character of the instrument, but disagreed with the trial court in the latter's conclusion that the deed could be upheld for other reasons.

There are several other cases cited by appellants in the same connection, which have had our consideration, but we are of the opinion that none of them would be authority in support of appellants' contention that the undisputed evidence in this case would compel a holding at our hands, as a matter of law, that the instrument executed by

Emanuel and Caroline Davis to Allen Bailey was but a mere security for debt, and not void under the Constitution of this state.

The second proposition under this assignment is, in substance, that .the evidence so clearly preponderated against the verdict of the jury on the issue as to the character of the instrument in question, as to make it clear that the verdict of the jury was wrong, and that therefore it is the duty of this court to set the verdict aside. We have also concluded that we cannot sustain this proposition, but, on the contrary, we think, upon the evidence as a whole, bearing upon this issue, the jury was warranted in finding that the instrument in question was intended to be a deed between the parties, as upon its face it purported to be.

Among other cases cited under this proposition, is that of Toole v. Moore, 203 S. W. 436, the opinion in which was by this court, and which was prepared by the writer. Counsel for appellant have quoted at some length from the expressions there found, and contend that the rule there announced by this court is sound, and should be applied here. We adhere to everything that we said in the Toole-Moore Case, in which we held that the verdict of the jury there under discussion was so manifestly and clearly against the overwhelming weight of the evidence as to justify our conclusion that the verdict was wrong. The principle and rule announced in that case we believe to be sound, and would feel it our duty to again repeat and apply it here, if the state and character of the .evidence were such as we conceived it to be in that case. We repeat, however, that upon the evidence in this case as a whole we would not feel authorized to hold that the jury's finding on the issue as to the character of the instrument here under consideration is without sufficient support. We, therefore, overrule the first assignment of error.

Appellants' second assignment, which is submitted as a proposition, may be more clearly comprehended by quoting it here, as follows:

"The court erred in overruling appellants' motion to enter judgment in their behalf, and in entering judgment for the appellee, based upon the findings of the jury, for the following reasons, to wit: Because the admission of counsel is that Emanuel Davis was the common source of title, and that the .plaintiffs are his heirs at law; that the said Emanuel Davis died in April, 1902, and under said agreement of common source it is presumed that the title to the land in controversy was vested in him at the date of his death; that the undisputed facts of the case show that if any title passed from Emanuel Davis by reason of the instrument executed November 30, 1897, by reason of the vendor's lien being retained in said conveyance, the failure of the said Allen Bailey to pay any part of said vendor's lien notes after becoming due, his declaration that he did not intend to pay them, and did not intend to have any-

thing to do with the transaction, his recognition of title in Emanuel Davis by paying rent for the year 1899, and the continued possession by Emanuel Davis and his family of the land in controversy and the rendition of same for taxes up to March, 1901, conclusively show a rescission of the pretended sale of November 30, 1897, and conclusively show that the superior legal and equitable title to said land was vested in Emanuel Davis at the date of his death in April, 1902; that the uncontradicted evidence shows that the land in controversy was a part of a larger tract containing about 125 acres, known as the homestead tract of Emanuel Davis and Caroline Davis, and that said Emanuel Davis and the plaintiffs have been in continuous possession of said tract of land for more than 40 years, residing upon, using, and cultivating the same; that the possession taken by defendant, Cox, was merely as a naked trespasser, and the deed under which he claimed had no connection with the true title to said land; that there was no definite proof as to the amount of land inclosed and adversely held by him for a period of 5 years. His possession therefore' being limited to his actual inclosures, and the evidence failing to show the extent of same, judgment should have been rendered in favor of plaintiffs for the land sued for."

As stated in the beginning, appellants, upon the coming in of the verdict, made a motion for judgment thereupon, which was refused by the trial court. And it was, in fact, agreed in writing that—

"For the purpose of this trial, it is agreed by and between counsel for the plaintiffs and defendant herein that Emanuel Davis is the common source of title to the land in controversy."

It was also admitted in writing that the plaintiffs are the heirs at law of Emanuel and Caroline Davis, and, as assumed by the proposition, it was shown by the undisputed evidence that the homestead tract of about 125 acres had been claimed and owned and occupied by Emanuel and Caroline Davis, as their homestead, for a great many years, and was still stamped with the homestead character at the time of the execution of the deed to Allen Bailey in November, 1897. It was further shown, by undisputed evidence, that this 80 acres described in the deed to Allen Bailey was actually surveyed for the first time about May 20, 1901, and also it was shown that at the date of the execution of the deed from Fitze to appellee, Cox, on March 7, 1901, Mary Davis, one of the plaintiffs, was residing on this particular' 80 acres, but, as stated before, about that time Mary removed from this 80 acres, and thereafter none of the plaintiffs ever had any actual possession of any part of this 80 acres. It was also shown by the evidence that Cox, at the time he purchased from Fitze, knew that .the 125-acre tract from which the 80 acres were cut off had constituted the homestead of Davis and wife. The actual possession which constituted the basis of Cox's

claim of limitation under the 5-year statute was commenced in the summer or fall of 1906, but the deed from Fitze had been of record since March, 1901, and it is unquestioned that his possession thereafter was continuous and adverse, and that the necessary payment of taxes was made to give him title under the 5-year statute, if, under the facts of this case, he could procure title by limitation.

[2, 3] We are not sure that we clearly understand counsel for appellant with reference to his claim that the agreement of common source in this case could have any material effect, if, upon the whole facts, appellants were not entitled to recover this land from the appellee. We understand that the rule of common source is but a rule of evidence, and is not based upon any principle of estoppel, nor is it any rule of substantive law. So far as we are able to determine, the only effect that the agreement of common source had in this case was to render it unnecessary for appellants to prove title from the sovereignty of the soil, and, further, that if they showed superior title to the land in controversy under Emanuel Davis, the agreed common source, they were entitled to recover. But we do not think that the agreement had the effect, or was intended to mean, that title to the land in controversy was in Emanuel Davis at the very time of his death. It simply meant that both parties were deraigning title from him, or claiming title from him, or through him, and either party under that agreement was authorized to show, if he could, that his title from that common source was the superior title. As to the contention that the undisputed facts in this case showed that there was a rescission by the parties of the transaction prior to the taking of actual possession of the land in controversy by Cox, and that therefore the possession by any of the Davises of any part of the original 125 acres drew to appellants the constructive possession of the whole of said tract not actually inclosed by Cox, and that such condition continued to the filing of this suit, we cannot sustain. It is true that Allen Bailey testified, as we have stated above, that after he became apprehensive that he might lose the title to the land in controversy, and for that reason declined at that time to pay the notes evidencing the purchase money, he told Emanuel Davis that if he would pay off the Fitze note, on which Allen Bailey was indorser, he (Bailey) would reconvey the land to him, but the record fails to show that the Fitze debt was paid off, but, on the contrary, shows conclusively that the note was sued on by Fitze, and judgment was taken against both Emanuel Davis and Bailey, and there

229 S.W.—63

is no showing in the record that any reconveyance of any character was made by Bailey back to Emanuel Davis or Caroline Davis or any of the appellants. And if the notes executed by Allen Bailey to Emanuel Davis, at the time of the execution of the deed, and which represented the purchase money for the land, were ever returned, or offered to be returned, to Bailey, the record does not show such fact. Under these facts, we feel sure that no rescission, as claimed by appellants, was shown, as a matter of law, and there was no such issue asked to be submitted to the jury, and if any finding in that connection were necessary, it should be presumed that the trial court found against the claim of rescission in support of the judgment.

No useful purpose would be subserved by discussing the authorities cited in this connection by counsel for appellants, holding that a vendor in an executory contract of sale of land, as the deed between the Davises and Bailey was, has the right, after default in payment by the vendee, to declare a rescission, and make it effective, especially where it would not be inequitable to permit such vendor to do so, but the question here is, Was there such a rescission? The undisputed proof here shows that when the tract of 80 acres in controversy was surveyed off for Cox, the appellee, Emanuel Davis himself was present when the county surveyor did the work, and pointed out the starting corner, to aid the surveyor in doing the work, and there is not a word of evidence in the record showing that Emanuel Davis during his lifetime ever claimed that the transaction as between Bailey and himself had been rescinded, and that he still claimed the 80 acres in controversy for taxes. Certainly the facts as we have stated them—and we think we have stated practically all of the material facts bearing on the contention of rescission—do not compel the conclusion, as a matter of law, that there was a rescission of the transaction between Emanuel and Caroline Davis and Allen Bailey, and therefore we cannot sustain the proposition under consideration, but overrule the same.

It follows from what we have said, and the admission of counsel for appellants, that the jury's finding on the issue of limitation in favor of appellee was sustained by the evidence, if there could be limitation in favor of appellee, that such finding of the jury in his favor should be upheld, and his claim of title by limitation on that issue sustained.

We are of opinion that all assignments of error should be overruled, and the judgment of the trial court affirmed; and it will be so ordered.