## FARMERS' RICE MILLING CO. v. STANDARD RICE CO. (No. 1121.)

(Court of Civil Appeals of Texas. Beaumont. June 24, 1924. Rehearing Denied June 25, 1924.)

**1. Evidence ⬨➞413—Sales ⬨➞199—Intent contrary to terms of sale cannot be shown; time title passes depends on circumstances and parties' conduct, if contract. is ambiguous.**

· Where terms of written contract for sale of specific goods, construed as whole, show full and complete contract and parties' intent to pass title to buyer at once, title so passes, though goods are not then delivered to buyer, and neither party may offer proof that such was not their intention; but where contract is ambiguous as to some essential provisions and such intent is not clear, title is transferred at time intended, as indicated by written terms of contract, circumstances attending execution, and conduct of parties.

**2. Evidence ⬨➞461(1) — Written contract of sale held not so clear and complete as to preclude parol proof of parties' intention as to time for passing title.**

Terms of written contract for sale of rice held not so clear, full, and complete as to preclude parol proof that it was not parties' intention to pass title to buyer immediately on execution of contract.

**3. Courts ⬨➞104 — Evidence not discussed in detail on affirmance of judgment.**

It is appellate court's custom, on affirming judgment, not to discuss evidence on which it rests in detail. ,

**4. Sales ⬨➞202(5)—Delivery of goods to carrier passes title, unless seller's intention to retain title appears.**

Delivery of goods by seller to common carrier for transportation, in compliance with contract, passes title to buyer, unless it appears that it was seller's intention to retain title.

**5. Sales ⬨➞202(6)—Title to goods held not to have passed on seller's delivery to carrier.**

Where bill of lading to seller's order indorsed, "Allow inspection," was forwarded with draft attached for purchase price to seller's agent at point of destination, with intent that draft be paid before bill was surrendered or goods delivered, delivery to carrier by seller did not pass title, and buyer did not break contract by declining to accept goods as inferior and not up to sample when tendered for delivery at point of destination.

Error from District Court, Harris County; W. E. Monteith, Judge.

Suit by the Farmers' Rice Milling Company against the Standard Rice Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Bryan, Dyess & Colgin, of Houston, for plaintiff in error.

Andrews, Streetman, Logue & Mobley, of Houston, for defendant in error.

HIGHTOWER, C. J. The plaintiff in error, Farmers' Rice Milling Company, who, for brevity, will be designated hereinafter as appellant, filed this suit in one of the district courts· of Harris county against defendant in error, Standard Rice Company, who, . for brevity, will be hereinafter designated as appellee, seeking to recover the sum of $5,670.46, with interest on that amount from October 8, 1920, at the legal rate, as damages alleged by appellant to have been sustained by it in consequence of appellee's failure to accept and pay for 819 sacks of rice which appellant alleges it sold to appellee on or about April 15, 1920, by written contract between the parties, at the agreed price of 10 cents per pound, which rice appellant alleged appellee finally refused to receive and accept and pay for; and it was alleged by appellant that it was ultimately forced to sell the price for a much less price than that agreed upon between the parties, and the amount sued for is the net difference between the contract price and the amount received by appellant at the time the rice was sold.

The appellee, after a general demurrer and several special exceptions, all of which are immaterial here, and a general denial, further answer specially, in substance, that the rice in question was to be delivered to it in the city of New York and to be there paid for after it should be ascertained by appellee that the same came up to sample, by which it was agreed to be purchased, and that when the rice reached New York to be delivered to appellant it was in a damaged and deteriorated condition, and was not up to sample by which it was agreed to be purchased, and that therefore appellee refused to receive and pay for the rice, and was justified in doing so. There is no question arising from the pleadings of the parties, and therefore what we have said so far is a sufficient statement of the pleadings, and we will not notice them at further length.

The case was tried without a jury, and resulted in a judgment in favor of the appellee, from which this writ of error is prosecuted. The trial court, at the request of appellant, prepared and filed findings of fact and conclusions of law, and the findings of fact, being full and explicit, will serve as a sufficient statement of the facts underlying this controversy and upon which the trial court's judgment is based, and therefore we insert in full these findings of fact, with the exception of one, being the sixteenth finding, which, as we consider, is wholly immaterial to a proper disposition of this case.

"Findings of Fact.

"(1) During the month of April, A. D. 1920, and on the dates more specifically set out hereafter, plaintiff, Farmers' Rice Milling Company, was a corporation under the laws of the state

of Louisiana; defendant, Standard Rice Company, Inc., was a corporation under the laws of the state of Texas, having its principal office and place of business in Houston, Harris county, Tex.; and I. Silverberg Commission Company was a copartnership, composed of I. Silverberg and Henry Schattman, engaged in and doing a rice brokerage business in the city of New York, state of New York.

"(2) During the month of April, A. D. 1920, and on the dates specifically set out hereafter, one John D. Russ was the local agent and representative of the defendant in the city of New York, and I. Silverberg Commission Company were brokers selling and buying rice on commission on the New York market.

"(3) On or about the 13th day of April, A. D. 1920, plaintiff, Farmers' Rice Milling Company, acting by and through its brokers, I. Silverberg Commission Company, orally offered for sale to the defendant, Standard Rice Company, Inc., 819 pockets of Blue Rose rice, as per sample No. 62, doubles, at 10 cents per pound, f. o. b. cars at Bellevue, Calcasieu parish, La., which offer defendant, Standard Rice Company, Inc., acting by and through its agent, John D. Russ, accepted; said offer and acceptance being upon terms and conditions, in substance, as hereinafter mentioned.

"(4) Plaintiff, on or about the 15th day of April, A. D. 1920, prepared a written agreement and contract embodying, in substance, the terms and conditions of said oral agreement; same was executed in triplicate originals by Carl Himel, general manager for plaintiff at its home office at Lake Charles, La., and caused said copies to be presented to John D. Russ at the office of defendant in New York, and Russ signed two copies thereof as agent for defendant. Said document was as follows:

" 'Domestic Contract.

" 'Adopted by the Rice Millers' Association and the National Wholesale Grocers' Association of the United States, effective August 1, 1919.

" 'Lake Charles, La., 4–14–20.

" 'Farmers' Rice Milling Company, Inc., hereby sells and agrees to deliver, and the undersigned buyer hereby purchases and agrees to pay for, the following merchandise: 819 pockets Blue Rose rice, No. 62, doubles, for Standard Rice Milling Company, New York City. Draft dated April 15, 1920, less 1 per cent. if paid within 10 days. Sellers to allow buyers 30 days' free storage and insurance for the price and sum of 10 cents per pound. Shipment soon as embargo is lifted. Delivery f. o. b. cars at Bellevue. Calcasieu parish, La.

" 'This agreement is made upon the terms and conditions printed on the reverse hereof, with all of which the buyer is fully familiar.

" 'This written agreement is the complete agreement of the parties and is not binding on seller until accepted and confirmed by wire, or in writing.

" 'I. Silverberg Commission Co., Broker.
" 'Standard Rice Co., Inc.
" 'John D. Russ, Buyer.
" 'Accepted: Farmers' Rice Milling Co., Inc., by Carl Himel, Manager.
" 'Date 4/15/20.'

"(5) Russ, for account of defendant, did not deliver any of said copies to Farmers' Rice Milling Company, on account of the fact that certain printed portions on the back thereof, made a part of the contract by reference on its face, were objectionable to Standard Rice Company. He so advised Silverberg Commission Company's representative, but stated that otherwise the face of the agreement was not objectionable.

"(6) The said Russ was not authorized by Standard Rice Company to enter into said contract in the form presented, containing portions thereof printed on the back, but did have authority and did execute the contract as written, except the portion thereof shown on the back, and except for the clause on the face thereof which referred to the back.

"(7) On April 15, A. D. 1920, Farmers' Rice Milling Company caused to be prepared and mailed to Standard Rice Company, Inc., its invoice covering the rice in question, on the face of which it was recited as follows: 'Terms: 1 per cent. if paid within 10 days; otherwise net cash.' Accompanying the above invoice was a letter of same date from plaintiff to defendant, in which plaintiff stated: 'We are to day making draft on you as per contract, which we trust you will honor in 10 days from date.'

"(8) On April 16, 1920, plaintiff, Farmers' Rice Milling Company, drew a draft on the defendant for the proceeds of said rice, which draft was presented and exhibited to the defendant, upon the face of which there had been placed conspicuously with a rubber stamp, the following: 'Collecting bank allow 1 per cent. cash discount if paid within 10 days from date of draft; otherwise no discount'—which draft was not paid by defendant, giving as ground therefor that no bonded warehouse receipt was attached thereto.

"(9) On or about June 9, 1920, after some correspondence passed, in which plaintiff stated that it could not issue a bonded warehouse receipt, the draft was again presented to defendant with ordinary (not bonded) warehouse receipt, but was not paid by defendant on the ground, as given by it, that defendant wished to inspect the rice at the warehouse and would send an inspector there to do so. No inspector was sent to examine the rice, and on June 22, 1920, plaintiff was requested by defendant to ship rice via Port Arthur or New Orleans, but the embargo at that time was still in existence and the rice could not be shipped. The defendant finally instructed plaintiff to ship the rice via all-rail route, and on July 22, 1920, the rice was placed on board car and shipped to defendant at New York. The 819 pockets of rice covered by this contract were at the time of sale segregated and placed in storage in plaintiff's warehouse with free insurance and storage, as called for in the contract. The rice, at the time it was set apart and at the time it was shipped, was inspected and found to be in good condition, but upon arrival in New York City on August 23d was found to have turned and to be yellow and musty, indicating damage in transit. On the face of the bill of lading prepared by plaintiff when the rice was shipped to defendant there was placed by plaintiff the following notation, 'Allow inspection,' and said bill of lading attached to draft was again presented to defendant when the rice reached New York City, but payment was refused on the

ground, as given by defendant, that it wished to inspect the rice before paying said draft.

"(10) By the expression, '1 per cent. discount if paid within 10 days; otherwise net cash,' in the rice business there is meant that the buyer may, if he chooses, pay the draft within 10 days and take 1 per cent. discount, or at his election he may decline to pay the draft within 10 days and not take the discount, and await the arrival of the rice at destination. The expression, '1 per cent. discount if paid in 10 days,' has no different meaning in the rice trade. The notation on the bill of lading, 'Allow inspection,' used with respect to rice under the circumstances, meant that the title to the rice did not pass to defendant until its arrival at destination and that the purchaser, upon arrival of the rice at destination, had the privilege of inspecting same, and might under the contract reject it if it did not come up to sample.

"(11) By the form of contract presented to Russ which was executed by Farmers' Rice Milling Company and copied herein in finding No. 4, by the contents of the invoice and of the draft referred to, the representatives of the defendant were led to believe, and they did believe, that under the contract the title to the rice would not pass until it arrived at destination, in accordance with sample, and that they had the privilege of awaiting the arrival of the rice at destination and inspecting the same before paying therefor, and that they would thereupon have the right to reject it if it at the time of arrival did not come up to sample. At no time did Standard Rice Company intend to enter into a contract which did not give such right and privilege.

"(12) The broker's memorandum, referred to in the testimony, was not accepted by Russ for the defendant and does not constitute the contract entered into, but the 'domestic contract' mentioned in finding No. 4 is the contract that was accepted by both parties.

"(13) On or about the 23d day of July, 1920, plaintiff, acting upon the instructions of defendant, shipped said rice to defendant at New York City, and said shipment arrived there on or about the 23d day of August, 1920.

"(14) Said shipment of rice was duly tendered to defendant on arrival at New York, but was found to have turned and to be yellow and musty, and was lacking in the qualities which were present, shown, and illustrated in said sample No. 62, in accordance with which said purchase was made.

"(15) On account of its failure to conform to said sample No. 62, defendant refused to accept the same.

"(16) [Omitted.]

"(17) The said shipment of rice, at the time it arrived in New York City and in its damaged condition, could not be readily sold, and had a reasonable market value of approximately 4¼ cents per pound."

The trial court concluded as a matter of law that under the terms of the written instrument mentioned in the findings of fact, when construed in the light of the facts and circumstances attending its execution and the acts of the parties with reference to it, it was intended by the parties that the title to

the rice should pass to appellee only upon its delivery in New York in accordance with the sample by which it was agreed to be purchased, and that, since it was not delivered in New York in accordance with the sample, appellee was not obliged to accept same or to pay therefor. The court further concluded that appellee had the right to decline to pay the draft mentioned in the findings of fact within 10 days, and thus to forfeit the 1 per cent. discount and to await the arrival and inspection of the rice at destination to determine whether the rice complied with the sample, and to reject it if it did not so comply, and upon such findings and conclusions entered judgment in favor of appellee accordingly.

It will be observed from the written contract between the parties mentioned in the findings of fact that it was executed on April 15, 1920, but all the evidence in the case shows that it was the intention of the parties that the shipment of rice to New York was to be by water from some Gulf port, and the facts further show that there was a water embargo on at that time, and the parties knew that on account of this embargo there would not be an immediate shipment of the rice at the time the written contract was made, but contemplated that the shipment should move as soon as the embargo was raised, or within a reasonable time thereafter. As a matter of fact, the shipment did not move until July 23, 1920, on which date it was shipped by rail, and reached New York City on August 23, 1920, being en route a month. The facts show without dispute that when the rice was delivered to the railway carrier by appellant, on July 23d, as above stated, it was in good condition and up to sample in every respect, but that when the shipment reached New York, a month later, the rice was very much damaged, discolored, and had so deteriorated that its best market price in New York was only about 4½ cents per pound. Because of this deterioration in value and failure to come up to the sample by which contracted to be sold, appellee, after inspecting the shipment, absolutely declined to accept it, and this suit followed; appellant claiming that title to the rice passed to appellee upon the date that the written contract referred to in the findings of fact was executed, and that appellee was bound to pay for the rice according to the contract price, regardless of the fact that the shipment failed to come up to sample when it reached New York, and that appellee was liable to appellant for the full contract price as agreed upon between the parties. If mistaken in this contention, appellant contends, nevertheless, that when the rice was delivered to the railway carrier on July 23, 1920, as we have shown, such delivery amounted, in law, to a delivery to the appellee, and that the title to the rice, under the facts of this case, at once passed to

appellee upon such delivery to the railway company, and that, since it was shown without dispute that the rice was then according to sample, appellee at once became liable to appellant for the contract price, and that such liability was in no manner changed or diminished by the subsequent deterioration of the rice, and that therefore the judgment in this case should have been in its favor for the full amount sued for.

These are the two main contentions advanced by appellant for reversal of this judgment and, while there are several propositions, yet they all together raise only these two main contentions.

Appellee, on the contrary, contends that the written contract between the parties, as we have shown it, did not, upon its face and by its terms, evidence an executed contract of sale between the parties, clearly showing that the title of the rice was to then pass from appellant to appellee, and that it was therefore open to proof as to what the intentions of the parties to the contract were as to the passing of the title to the rice, and that the evidence adduced upon the trial of this case, as a whole, showed clearly that it was not the intention of the parties, at the time of the execution of the written contract, that the title to the rice should then pass to appellee, but, on the contrary, that it was the intention of the parties that the rice should be delivered to appellee in New York City, and that when delivered it should come up to the sample by which purchased, and that, if not, appellee would have the right to decline to accept and pay for it. Appellee further contends that the delivery of the rice to the railway company on July 23d, following the date of the contract, was not a delivery in contemplation of law to appellee, and that it was not intended by the parties that such delivery was a delivery to appellee, but, on the contrary, that it was the intention of appellant, at the time of such delivery to the railway company, to retain the title and possession of the rice until it should be paid for by appellee when delivered at New York City, if the rice was found to comply with or come up to the sample by which it was sold.

These are the two main contentions of both parties, and are the only ones that we shall specifically discuss. Before proceeding, however, to discuss these contentions, we will say at once that we adopt each and every finding of fact made by the trial court as being amply supported by the evidence in the record, notwithstanding appellant has questioned the sufficiency of the evidence to sustain findings Nos. 10, 11, and 12, as we have shown them. It would serve no useful purpose to discuss the evidence relating to these findings, because we would, at last, have to conclude, as we have, that they have ample support in the evidence.

[1] We think it may be stated as a correct legal proposition that where a contract for the sale and purchase of specific goods is wholly in writing, and the written terms, construed as a whole, show a full and complete contract touching the subject-matter, and the writing, when construed as a whole, shows that it was the intention of the parties to pass the title to the goods from the seller to the buyer at once, then it must be held that title to the goods so passes, even though the goods are not then delivered to the buyer, and that it will not be open to either party to such a written contract to deny the written terms thereof or offer proof of any character for the purpose of showing that it was not the intention of the parties that the title to the goods should so pass to the buyer. Where, however, the written contract is ambiguous as to some of its essential provisions, and it is not clear from the contract, as a whole, that it was the intention of the parties that the title to the goods should pass to the buyer immediately upon its execution, then in such case the title to the goods is transferred from the seller to the buyer at such time only as the parties to the contract intended the title to be transferred. In other words, whether such a sale is executed or executory depends on the intention of the parties to the contract, and for the purpose and with a view to ascertaining this intention regard must be had to the written terms of the contract, the circumstances attending its execution, and the conduct of the parties relative to it.

[2, 3] As we have said, it is appellant's contention that the terms of the written contract between the parties in this instance were so clear, full, and complete, and manifest so certainly the intentions of the parties thereto to pass at once title of the rice to appellee, that it was not open to parol proof as to what the intentions of the parties were with reference to the passing of the title to the rice, and that therefore, notwithstanding there was parol proof in that connection tending to show that it was not the intention of the parties to pass the title to the rice to the appellee immediately upon the execution of the contract, such proof was improperly admitted, because varying the terms of the clear written contract, as appellant contends, and that it was the duty of the trial court to dismiss such parol proof after hearing it and to enter judgment in appellant's favor upon the written contract. We cannot agree with this contention, because we think that it does not clearly appear from the terms of the written contract that it was the intention of the parties to immediately pass the title to the rice from appellant to appellee, but do agree with the trial court that the evidence in this case, that is, the contract itself, the circumstances attendant upon its execution, the conduct of the parties relative to the contract, make it manifest that it was the intention of the

parties that title to the rice should not pass immediately to appellee upon the execution of the contract, but that the parties contemplated and intended that the rice should be delivered to appellee in New York City, and that it should come up to the sample by which it was purchased, and that, if not, appellee would not be compelled to accept it or pay for it. It would serve no useful purpose to discuss the many facts and circumstances in this record supporting this finding of the trial court, and for that reason we decline to enter into such discussion. It is the custom of this court, as a general rule, where we affirm a judgment, not to discuss the evidence in detail upon which the judgment rests, but where we feel compelled to reverse a judgment because of the insufficiency of the evidence to sustain some necessary finding of fact, we then always try to point out at reasonable length wherein the evidence is insufficient to warrant the verdict or judgment.

If we are correct in the conclusion that the written contract in this instance does not clearly show that it was the intention of the parties to pass the title to the rice from appellant to appellee upon the execution of the written contract, then there can be no doubt of the correctness of our conclusion that it was permissible for appellee to offer oral proof, as he did, as to what the intentions of the parties to the contract were relative to the passing of the title to the rice, and that such intentions, when ascertained, must control the rights and liabilities of the parties. As to such conclusion, the authorities are practically unanimous.

As sustaining their contentions in this case, counsel for both parties have cited in their briefs rather copiously Williston on Sales, a very eminent and interesting writer on the subject. This work, at page 353, contains the following:

"Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and circumstances of the case."

In 35 Cyc. 277, it is said:

"When the contract is for the sale of specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred, or, in other words, if the goods are specific, whether the contract of sale is executed or executory depends solely on the intention of the parties, or, as otherwise expressed, where neither the statute of frauds nor the rights of creditors are involved, the title will pass whenever the parties intend it to. * * * The parties may make whatever agreement they see fit as to when the title shall pass, and where the language of the agreement clearly and unequivocally manifests such intention, it will control; but if, as frequently happens, the intention is not clearly manifested, it will be ascertained by the rules of construction, considering not only the language of the agreement but also the subject-matter, situation of the parties, and other circumstances surrounding the transaction."

In a note to a case found in 26 L. R. A. (N. S.) 7, it is said:

"Always, as between buyer and seller, the question whether or not, and when, the title passes to the property sold, is dependent upon the intention of the parties to that contract of sale."

The Supreme Court of this state, in Woods v. Half, 44 Tex. 633, in discussing the point here under consideration, said:

"Law writers and courts have given some general rules governing questions like those involved in this case, but a careful examination will show that each case has been controlled by its own attendant circumstances. There is, however, one thing that courts have ever sought for, and if found clearly and unmistakably, it has been of controlling force: That is, the intention of the parties."

See, also, Alexander v. Hiedenheimer (Tex. Com. App.) 221 S. W. 942; Gose v. Brooks (Tex. Civ. App.) 229 S. W. 987; Rea v. Schow, 42 Tex. Civ. App. 600, 93 S. W. 706. Practically innumerable authorities might be cited and discussed in this connection, but it would be a useless consumption of time to mention more of them.

Having reached the conclusion that the written contract between the parties in this case for the sale of the rice in question did not, as a matter of law, manifest an intention on their part to pass the title to the rice to appellee at the time the contract was executed, and having reached the further conclusion that the trial court's finding of fact to the effect that it was the intention of the parties to the contract, construed as a whole, in the light of the attending circumstances and the conduct of the parties relative to it, that title to the rice should be retained by appellant until the rice should be tendered for delivery and inspection at New York, is amply supported by the evidence, we overrule appellant's first contention and all propositions in that connection.

We will next consider appellant's contention that title to the rice in question passed to appellee when the rice was delivered, on July 23d, by appellant to the railroad company for carriage to New York. If the title to the rice passed to appellee at that time, then we would be compelled to hold, upon the facts in this case, that appellee was liable for the full contract price, and reversal of the trial court's judgment would have to follow and be rendered in appellant's favor.

It will be seen that the written contract between the parties contains this provision

touching the delivery of the rice: "Delivery f. o. b. cars at Bellevue, Calcasieu parish, La." It is argued by counsel for appellant that a compliance with this provision of the contract relative to delivery was, in legal effect, a delivery of the rice to the appellee, and that the title thereupon immediately passed to appellee.

[4, 5] The general rule may be stated to be that, where goods are delivered by a seller to a common carrier for transportation in compliance with the terms of the contract between the buyer and seller, the delivery of such goods to the carrier has the effect in law to pass the title to the property to the buyer. There are, however, well-recognized exceptions to this general rule, and if it appears from all the facts in any given case that it was not the intention of the seller, at the time of making delivery to the carrier, to thereby pass the title of the goods to the buyer, but, on the contrary, that it was the intention of the seller, to be gathered from all the facts and circumstances, to retain the title in the goods, then the delivery to the carrier does not pass the title, but remains in the seller, as between himself and the buyer. The facts in this case show, without dispute, that when delivery of the rice was made to the railroad company on July 23d by appellant the bill of lading showed that the shipment was consigned to appellant itself. In other words, it was an order bill of lading to appellant's order. It was consigned to appellant in New York, and not appellee. This bill of lading was then mailed to appellant's agent in New York City, with draft attached for the purchase price of the rice, and when the shipment arrived at New York this agent of appellant, who was acting exclusively for appellant in this transaction, took the bill of lading, together with the draft attached, to appellee in New York, for the purpose of collecting the draft, and had no intention of surrendering the bill of lading until the draft should be paid.

Not only was the rice consigned to appellant's order in New York and the bill of lading, with draft attached for the purchase price, forwarded to appellant's own agent there, with the intention that the draft should be paid before the bill of lading was surrendered or rice delivered to appellee, but the bill of lading also had indorsed on it this notation, "Allow inspection." If it was the intention of the parties to this contract of sale and purchase that the title to the rice should pass to appellant upon delivery to the railroad company at Bellevue, La., what was the necessity or reason for appellant's consigning the shipment to its own order and attaching the draft and forwarding the same to its own agent in New York for collection, as it did, and, especially, why was the notation, "Allow inspection," indorsed on the bill of lading, if it was, in fact, considered and intended by appellant that the rice

should belong to appellee when it was delivered to the railroad company in Louisiana? It seems to us that the only reasonable conclusion would be that appellant, in so handling the shipment, intended that when it arrived at New York and was received by its agent there it should be tendered to appellee for inspection as to whether it came up to sample, and, if so, that appellee should pay for the rice according to the contract price, and that this money should be collected by appellant's agent before the rice should be delivered to appellee. If so, it was not the intention of the parties to this contract that the delivery of July 23d to the railroad company in Louisiana should have the effect to pass the title to the rice to the appellee, and in such event the title to the rice did not pass; and since it was shown, without dispute, that the rice, when tendered for delivery to appellee in New York, was so inferior and did not come up to sample by which purchased, and that its acceptance was declined by appellee on that account, there was no breach of contract on appellee's part, as claimed by appellant, and, consequently, no right of recovery in appellant, as sought by it. The situation, differently stated, was about this: The appellant, the seller of the goods in this instance, delivered them to the railroad company in Louisiana for transportation to New York, their destination, the shipment being consigned to appellant's own order by order bill of lading, which bill of lading, with draft attached for the purchase price of the goods, was forwarded to appellant's own agent in New York, with the intention that appellant's agent should deliver the same to appellee on payment by it of such purchase price, and by so handling the shipment appellant thereby manifested its intention to reserve the jus disponendi, and it was open to the trial court to find, as he did, that by handling the shipment in this way it was not intended by the parties to the contract that the title to the rice should pass to appellee at the time of the delivery to the railroad company in Louisiana; and if the evidence was sufficient, as we think it was, to justify this finding by the trial court, appellant is wrong in its contention that title to the rice passed when appellant delivered it to the railroad company in Louisiana, and the judgment of the court in this case was correct.

In 35 Cyc. 332, it is said:

"Although the property in the goods will ordinarily pass on delivery, yet it will not do so if the intention clearly appears on the part of the seller to retain the jus disponendi of the right of property."

In Benjamin on Sales (7 Am. Ed.) at page 371, the author says:

"The following seem to be the principles established by the foregoing authorities:

"First. Where goods are delivered by the ven-

dor, in pursuance of an order, to a common carrier for delivery to the buyer, the delivery to the carrier passes the property; he being the agent of the vendee to receive it, and the delivery to him being equivalent to a delivery to the vendee.

"Secondly. Where goods are delivered on board of a vessel to be carried, and a bill of lading is taken, the delivery by the vendor is not a delivery to the buyer, but to the captain as bailee for delivery to the person indicated by the bill of lading as the one for whom they are to be carried. * * *

"Thirdly. The fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve the ·jus disponendi, and to prevent the property from passing to the vendee.

"Fourthly. The prima facie conclusion that the vendor reserves the jus disponendi when the bill of lading is to his order may be rebutted by proof that in so doing he acted as agent for the vendee, and did not intend to retain control of the property; and it is for the jury to determine as a question of fact what the real intention was."

In Williston on Sales, § 283, it is said:

"It follows from what has been said that, if the seller takes a bill of lading in which he is named as consignee as well as consignor, the carrier is a bailee for the seller, not the buyer, and the title is retained. The practice of taking bills of lading in this form has been common for centuries in order to preserve to the seller a hold upon the goods during transit, and many cases have sustained the validity of this retention of title. * * * It is commonly said that the ·seller by taking the bill of lading in his own name reserves the jus disponendi or right of disposal of the goods, and the latter expression is used in the section of the English Sale of Goods Act corresponding to that here under discussion. There seems no doubt that the ·seller who thus consigns the goods to himself has complete control over them, and that the so-called jus disponendi is in fact title. The seller may not only retain the goods until the buyer performs his obligation under the contract, but may, even in violation of the contract, dispose of them to third persons. * * * It is not ordinarily material for the seller's protection whether the bill of lading is an order bill or a 'straight' bill naming him as consignee without the word 'order.' Though, as will be seen, if the bill is in the latter form, the carrier need not require production or surrender of the bill, yet delivery must be made to the consignee, and this enables the seller to control the goods at their destination."

In 35 Cyc. 333, it is said:

"If where there is a consignment to the seller, his agent, or order, the bill of lading is forwarded to the seller's agent with draft attached to be delivered to the buyer on payment, the seller thereby manifests an intention to reserve the property in the goods, and the property does not pass until the draft is paid."

In 24 Ruling Case Law, p. 44, the rule is stated as follows:

"The fact that the bill of lading is taken out in the name of the seller will not necessarily prevent the title from passing on delivery to the carrier, as an assignment of the bill of lading to the buyer will make the shipment conform to the original object of the purchase as fully as if the bill of lading has been taken in his name, and ultimately the question as to when the title passes is governed by the intention of the parties. This fact, however, is strong proof of the seller's intention to reserve the jus disponendi so as to prevent the title from passing, and is said to be almost decisive. And it has been held that a. seller consigning property to his own order, with directions to notify the buyer thereof, and sending a draft, with a bill of lading attached, requiring payment of the draft before the bill of lading is delivered, does not part with his title to the property until the draft is paid."

In 24 Am. & Eng. Enc. of Law, at page 1075, we find this:

"The foregoing rules for determining whether the property in goods sold has passed from seller to buyer are rules of construction adopted for the purpose of ascertaining the intention of the parties. It follows ·necessarily that such. general rules are not applicable where exceptional circumstances repel the presumptions or inferences upon which the rules rest. If, notwithstanding the appropriation of the goods, the seller's acts show clearly his purpose to retain the ownership, the property does not pass. * * * Where the seller delivers goods to a common carrier for delivery to the buyer, this is equivalent to a delivery to the buyer, whose agent the carrier is deemed to be. If a bill of lading is taken, the carrier is bailee for the person indicated by the bill of lading. If, as is frequently the case, the seller has the bill of lading so drawn that the goods are deliverable to his order, this, in the absence of evidence to the contrary, is almost decisive in showing his intention to reserve the jus disponendi, and to prevent the passing of title to the buyer."

We have concluded that the rule as announced by the above authorities is the rule which has been followed on the question now, under consideration by the courts of Texas. In the case of Grayson County National Bank v. Railway Company (Tex. Civ. App.) 79 S. W. 1096, we find this expression:

"When the seller takes a bill of lading which expressly stipulates that the goods are to be delivered at the point of destination to himself, his order or assigns, there is the clearest evidence upon the face of the transaction that, notwithstanding such an appropriation of the goods as might have been sufficient to transfer the title to the buyer, the seller has determined to prevent this result by keeping the goods within his control."

The court in that case cites a great number of authorities from other jurisdictions sustaining the rule. The opinion in that case was by one of our Courts of Civil Appeals, and while the disposition made by the Court of Civil Appeals was reversed by the Supreme Court on writ of error, yet the opin-

ion of the Court of Civil Appeals on the point quoted was not disapproved but was concurred in, for it was said by the Supreme Court (100 Tex. 17, 93 S. W. 431), speaking through Judge Gaines:

"It is laid down as elementary law that the consignee is presumably the owner of the goods."

See, also, Cudahy Packing Co. v. Dorsey, 26 Tex. Civ. App. 484, 63 S. W. 548; Lippman v. Produce Company (Tex. Civ. App.) 184 S. W. 534; Hamilton Mill & Elevator Co. v. Rayford (Tex. Civ. App.) 255 S. W. 1017; Watson v. Patrick (Tex. Civ. App.) 174 S. W. 632; Scott & Mayhall v. Lubbock Grain & Coal Co. (Tex. Com. App.) 252 S. W. 164.

We think and hold that the evidence was amply sufficient to warrant the conclusion that it was the intention of appellant, when it delivered the rice in question to the railroad company on July 23, 1920, to retain in itself title thereto and jus disponendi (or right of disposition); and such being the intention, the title to the rice did not pass upon such delivery to the railway company, as contended by appellant, and it was competent for the court to so find.

We do not believe that our conclusions on the point last discussed are in conflict with the opinion of the Supreme Court of this state in the case of Robinson & Martin v. Railway Co., 105 Tex. 185, 146 S. W. 537, which authority is much relied on by appellant in this case in support of its contention that delivery of the rice to the railway company by it constituted a delivery to the appellee. That was a suit by Robinson & Martin against the railway company to recover damages alleged to have been sustained in consequence of negligence on the part of the railroad company in transporting a boiler which had been sold and shipped by the Erie Iron Works to Robinson & Martin, the purchasers, over the line of the railway company. It is true that the bill of lading in that case was made out to the shipper's order, and that a draft for the purchase price of the boiler was attached to such bill of lading. Robinson & Martin paid the draft and took up the bill of lading and then filed suit against the railway company for damages to the boiler, and the Supreme Court reached the conclusion in that case that Robinson & Martin, upon such facts, had the right to sue the railway company for the recovery of such damages as they sustained in consequence of the negligent delay. So, in this case, if the appellee had paid the draft which appellant drew for the purchase price of the rice, and the bill of lading had been surrendered and the rice delivered to appellee, appellee would have had the right, under the holding in Robinson & Martin v. Railway Co., to have maintained a suit against the railway company that handled the shipment. In other words, it would not have been open to the railway company, under such facts, to claim that the appellee was not the owner of the rice and asserted cause of action against it, and that, as we construe it, is the extent and meaning of the decision in Robinson & Martin v. Railway Co.

There are other counter propositions advanced by appellee, under which it is contended that the judgment in this case should be affirmed, but, since we have no doubt of the conclusions already reached, which determine the matter, it is unnecessary to discuss or mention such propositions.

We think the judgment should be affirmed; and it has been so ordered.